**Mort BRANDENBURG, as President of Liquor Salesmen's Union Local 2 of the State of New York, AFL–CIO, Plaintiff,**

v. .

**CAPITOL DISTRIBUTORS CORP. et al., Defendants.**

No. 72 Civ. 4778.

United States District Court, S. D. New York.

Nov. 20, 1972.

Victor Feingold, New York City, for plaintiff.

Morris A. Edelman, New York City, for defendants Charmer Industries, Peel Richards, Peerless Importers, Star Industries and Wayne Liquor.

Putney, Twombly, Hall & Hirson, New York City, for defendant Knickerbocker by Miles W. Hirson, James J. Dean, New York City, of counsel.

GURFEIN, District Judge.

Local 2 of the Liquor Salesmen's Union ("the Union") brought an action in the New York Supreme Court to enjoin the employers with whom it is in contractual agreement from allegedly breaching the collective bargaining agreement by laying off all their salesmen. The defendants removed the action to this court. There is federal question jurisdiction as delineated in 28 U.S.C. § 1441 because of Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185. See Avco Corp. v. Aero Lodge 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); Boys Markets v. Retail Clerk's Union Local 770, 398 U.S. 235, 244, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The Union now moves for a preliminary injunction pendente lite.

The background of the dispute is as follows. On November 1 a strike was called by a local union which handles deliveries (Local 816 of the Teamsters Union) and by a local union which has the inside clerical workers (Local 1 of the Distillery Workers Union). The plaintiff Union composed of salesmen did not join in the strike. There is a current collective bargaining agreement between it and the employers. As soon as the strike by the other crafts broke out the employer-defendants laid off all their salesmen, members of the neutral plaintiff Union.

The Union contends that the layoff is in breach of the collective agreement. The employers contend that the layoff is not in breach of the contract and was compelled by economic circumstances. The employers are apparently not in agreement among themselves on whether the arbitration clause of the agreement applies. They jointly maintain, however, that the plaintiff has shown neither irreparable injury nor likelihood of success in the litigation. Paragraph V(g) of the collective bargaining agreement with the industry provides: "The Employer shall not eliminate any salesman's job except as hereinabove stated, nor lay off any salesman after the probationary period provided for in this paragraph without the consent of the Union." By XVI(a) it is provided that, although all disputes are to be settled by arbitration under XVI(a), violation of Section V (among almost all other sections) "by the Employer" shall, notwithstanding XVI(a) constitute a breach of the agreement and an unfair labor practice which shall entitle the Union to apply for an injunction and resort to "economic action" without first resorting to arbitration. One employer-defendant contends that this destroys the mutuality of arbitration and that, therefore, paragraph V(g) even if construed as applicable does not bind the Union and is, hence, unenforceable against an employer. I need not decide this.

The threshold question is whether paragraph V(g) was intended to apply at all in this situation. Paragraph V generally covers the procedure for discharge for which reasons are to be given in duplicate, one to the salesman and one to the Union. It provides, inter alia, that probationer salesmen may be discharged without consent of the Union. Violation by any of the employer's salesmen of any of the rules and regulations shall result in immediate discharge of the salesman or salesmen

committing such violations. If the salesman is discharged and the Union contests the discharge, the matter shall be adjusted in accordance with the arbitration provisions of paragraph XVI. The only reasons constituting just cause for discharge are: "1) dishonesty; 2) incompetency; 3) violations of rules and regulations as set forth in Schedule 'A' attached."

In my view the whole of paragraph V, including (g), relates to the discharge or layoff of an individual salesman. A provision requiring the consent of the Union to a mass layoff based upon economic circumstances unrelated to the alleged delinquency of an individual salesman would be so different in scope from the rest of the paragraph that it should not be incorporated by implication. If the parties had bargained for a provision so unusual and so broad in scope they would have taken pains to fashion specific verbiage to express their purpose. I conclude that although the word "layoff" appears in paragraph V(g) it means no more than the suspension of work of an individual employee—something less than a total discharge for that particular individual. It does not embrace a total mass layoff by the employer because its business has been effectively stopped by impossibility of performance. I find that there is nothing in the agreement which deals with that matter. General layoffs for such reasons are not mentioned.

 The collective agreement contains an agreement to arbitrate disputes and controversies "before any strike on the part of the Union or any lockout on the part of the Employer" (Paragraph XVI(a)). A violation of a no-strike or no-lockout clause and a refusal to arbitrate would make injunctive relief permissible, despite the restriction in the Norris-LaGuardia Act, Boys Markets, *supra*. Correlatively, if there is no strike or lockout, injunctive relief is not indicated. Any party, however, is free to seek to compel arbitration.

 The employer action in this case was not a lockout. The defendants were engaged in no dispute with the plaintiff Union and their actions were not intended to coerce it to grant concessions. American Ship Bldg. Co. v. NLRB, 380 U.S. 300, 321, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965) (White, J. concurring); NLRB v. Great Atlantic & Pacific Tea Co. et al., 340 F.2d 690 (2 Cir. 1965); Local 50, Bakery & Confectionery Workers v. General Baking Co., 97 F.Supp. 73 (S.D.N.Y.1951). *Cf.* Laclede Gas Co. v. NLRB, 421 F.2d 610, 615 (8 Cir. 1970). "A lockout is an employer's withholding of work from his employees in order to gain a concession *from them*" (emphasis supplied). Restatement, Torts, Sec. 787, comment a.[1]

Here the "lockout" is not by a group of employers using a defensive lockout in a strike against one of their number. Here the salesmen laid off are members of a neutral union. I find no anti-union intent in this case. There is no retaliation here but a recognition of the economic reality that if goods cannot be delivered to the customer they should not be sold to the customer. In that sense, it is proper to call such conduct a layoff rather than a lockout. The strike of the office staff would, moreover, make it quite difficult to record the transactions. In a highly regulated industry like the liquor industry this could involve violations of laws requiring current reports.

Despite the apparent willingness of the plaintiff Union to cross picket lines and to continue business as usual during the strike by an affiliated union, the impossibility of maintaining integrated sales and deliveries makes the proposed action by the employers futile. To make the business operation viable would re-

1. A defensive lockout which results in loss of work by neutral employees has been sustained, particularly where the business requires the use of several crafts at the same time. See New York Mailers' Union Number Six v. National Labor Relations Board, 327 F.2d 292 (2 Cir. 1964).

quire, at the least, the hiring of scab drivers and office staff. There is no reason for the employers to be forced into that position. So far as the plaintiff employees are concerned they are the victims of a frustration of their collective bargaining agreement by the strike of the other unions. The strike was cause and the layoff effect.

■ The likelihood of success by the plaintiff in enjoining the layoff is not apparent. Moreover, the argument by the plaintiff Union that irreparable injury threatens because certain fringe benefits may lapse for failure of employer contributions during the layoff can be met without a general order requiring resumption of work.

■ The remedy at law as to commissions unpaid is, in any event, adequate. With regard to fringe benefits, the adequacy is not so clear, for there might be a divestment of rights for a failure of employer contributions. That applies to the Pension Plan, the Social Security Fund and the Severance Fund.

■ If the layoff turns out to be unlawful, compensation may be awarded, although since the salesmen work on commissions the amount would be unliquidated. With regard to fringe benefits, the provision for the Pension Plan in the agreement, paragraph XX(5) states: "There shall be no cessation of payments required to be made by the Employer by reason of any labor dispute between the parties, strike or lockout." I would interpret "lockout" *in this sense* to include mass layoffs. The Social Security Fund (paragraph XIX) requires the employer to make weekly payments. The same applies to the Severance Fund (paragraph XXI).

■ The specific paragraphs providing for employer contributions to these funds are exempted from the obligation of the Union to arbitrate concerning them. While there is no mutuality of remedy I need not decide that the matter is not arbitrable for that reason. I can construe the action for injunctive relief as submitting the matter in dispute to the Court since it is brought by the only party who may seek arbitration. On this phase of it, the contract appears to require employer contributions whenever there is a general temporary cessation of work. The plaintiff has a strong likelihood of success on this issue and there is a possibility of irreparable injury if fringe benefits are allowed to lapse during a temporary cessation of work. To insure that there will be no loss of fringe benefits because of the layoff the employers will be ordered to make the payments required under the collective bargaining agreement and the implementing documents.[2]

It is true that if the employers fail to make the payments required the Union or the member can make the payment and claim damages from the employer if he or it has adequate ground. But to insure that there will be no loss of fringe benefits because of the layoff, the employers will be ordered to keep up the payments required.

■ On the other hand, it would be inequitable to require the employers to pay the draw against commissions to salesmen who cannot work because of conditions beyond the control of the employer. One must sympathize with the salesmen who are caught in the middle of a labor dispute not of their making, but as is so often true in industrial

2. This Court has jurisdiction under § 301 (a) of the Labor-Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. § 185; see Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), although the State Court also has jurisdiction. Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). *Cf.*

Smith v. Evening News Ass'n, 371 U.S. 195, 199, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). The Union has standing to sue. Auto Workers v. Hoosier Corp., 383 U.S. 696, 699, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Since the case has been removed and there is federal jurisdiction, the order will issue.

strife the neutral victims are many and varied. See, *e.g.*, NLRB v. Great Atlantic & Pacific Tea Co., *supra*, 340 F.2d at 695.

On a balancing of interests the preliminary injunction requested is denied. My holding that the dispute is not arbitrable under the agreement is limited to a finding that *Boys Markets, supra,* is not applicable for the granting of injunctive relief to stop the layoff. If, without injunction, the plaintiff Union seeks arbitration it should not be deemed foreclosed by the decision of this particular motion.

The employers will be ordered, however, to continue the payments required to insure the continuity of fringe benefits during the layoff.

The foregoing represents my findings of fact and conclusions of law under Fed.R.Civ.P. 52(a).