INTERNATIONAL ALLIANCE OF THE-
ATRICAL STAGE EMPLOYEES, and
Moving Picture Machine Operators of
the United States and Canada, Local
293, et al.

v.

GULF INTERNATIONAL CINEMA COR-
PORATION d/b/a Gulf States Theatres
and Gulf States Theatres, Inc., a Corpo-
ration.

Civ. A. No. 82–5237.

United States District Court,
E.D. Louisiana.

July 25, 1983.

Marie Healey, New Orleans, La., for plaintiffs.

Lawrence J. Molony, Metairie, La., for defendants.

## ORDER

CHARLES SCHWARTZ, JR., District Judge.

This matter is before the Court on the cross-motions of plaintiffs and defendant for summary judgment. Following oral argument, and considering the memoranda filed by the parties, the record herein and the law applicable to the motions, the Court grants defendant's motion and denies plaintiffs' motion for the reasons hereinafter set out.

The parties stipulated that there are no material facts at issue that would preclude the Court from ruling on their respective motions.[1] Defendant (Gulf States) was signatory to several collective bargaining agreements with plaintiffs (Union), which agreements governed certain conditions of employment of all projectionists employed by Gulf States at its Plaza Cinema Four Theatre, its Aurora Theatre and its Sena Mall Theatre. Plaintiffs' grievances arise out of two separate allegations involving (1) the Plaza and Aurora agreements and (2) the Sena Mall agreement.

## PLAZA AND AURORA AGREEMENTS

Both the Plaza and Aurora agreements were executed in December, 1979 and expired in December, 1982. Neither agreement contains any provision regarding arbitration of disputes arising between the parties. Plaintiffs' claims are thus properly before the Court pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. 185(a).[2] On September 17, 1982, plaintiffs Joseph Cuccia, Andrew Cuccia, Alan Bock, Joseph Aguilar and Lawrence Buras, the regular projectionists at the Plaza and Aurora Theatres, were suspended from their employment for refusing to submit to polygraph examinations.[3] The examinations were required as a result of widespread vandalism directed against the defendant's theatres.[4] The vandalism stopped when the company let it be known the polygraph tests were being administered.[5] Over one hundred and fifty polygraph tests were administered to employees in the various locations involved over a seven day period.[6] All employees, including executives and office personnel, Union and non-Union, took the tests except for plaintiffs who were suspended from their employment for refusing to submit to the polygraph examinations.[7]

Plaintiffs filed suit on November 15, 1982 claiming that defendant had breached its agreement with the Union, citing the following provisions from the Plaza and Aurora agreements, respectively:

No projectionist shall be dismissed except for cause, and he shall be given two weeks' advance notice, in writing for his dismissal.

Just and sufficient reasons must be given for the dismissal of any projectionist employed under the terms of this agreement

1. See attached Statements of Material Facts submitted by plaintiffs and defendant.

2. 29 U.S.C. 185(a) provides:
   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

3. Subsequent to the filing of suit, plaintiff Buras returned to work and plaintiff Andrew Cuccia dropped his claim. The only remaining plaintiffs seeking damages from the defendant are Joseph Cuccia, Joseph Aguilar and Alan Bock.

4. Defendant's Statement of Material Facts, paragraphs 4, 5, 13, 14, 15, 18, 19.

5. Affidavit of George Solomon.

6. Defendant's Statement of Material Facts, paragraphs 25, 26.

7. Defendant's Statement of Material Facts, paragraphs 27, 28.

and the projectionist must receive two weeks notice in advance and in writing for dismissal.

Plaintiffs contend that their suspension is tantamount to a discharge, and on that basis, they submit that the contract was breached in that they were dismissed without notice and without just cause. It is plaintiffs' position that an "indefinite" suspension has occurred, which amounts to a termination as it is no more than a surreptitious discharge. Defendant denies that it has breached the agreements involved, claiming that a substantial distinction exists between an employee who is suspended and one who has been dismissed, and that the provisions of the agreements relative to dismissal do not apply to the suspended employees.

■ Resolution of this grievance turns on a determination of whether Gulf States breached the collective bargaining agreements by suspending certain projectionists for refusing to submit to polygraph examinations. We determine no such breach occurred. The employees were suspended following a period of vandalism at several of defendant's theatres. Although they were not permitted to return to work until they agreed to submit to a polygraph test, they remained on the company's payroll and continued to receive group insurance coverage.[8] Obviously, dismissed employees are not carried under the employer's insurance coverage. Nor is this the situation where the company exercises sole discretion as to the reemployment of an employee who has been suspended for an indefinite period of time. *See Penn-Dixie Cement Corp.,* 29 Lab.Arb. 451 (1957). The employees in question could terminate the suspension at any time by agreeing to take the examination requested of them.

■ Taking into consideration the stipulated factual background, replete with instances of extensive acts of vandalism and threats which preceded the company's decision to request the polygraph tests, there can be no doubt that these suspensions were instituted for a valid business reason as a condition of continued employment.[9] Thus, we do not find that the suspensions under such circumstances are synonymous with and/or a disguised termination.

■ Further, the Union made no demand for bargaining over the requirement to submit to polygraph tests so there was no breach of the contract by requiring employees to so submit to the examinations. Neither does the fact that no written provisions were made with regard to disciplinary action other than discharge abrogate the right of the employer to suspend employees for a valid business reason. Absent any contractual prohibition or restriction, the employer has the right unilaterally to promulgate reasonable orders, which orders need not have been negotiated with the Union. *Hydro-Conduit Corporation Laborers' International Union of North America, Local 383,* 70 Lab.Arg. 458 (1978). Accordingly, we find no breach of the collective bargaining agreements by Gulf States as there was no discharge so as to require the enforcement of the notice and just cause provisions of the agreement.[10]

## SENA MALL AGREEMENT

■ The Sena Mall agreement was executed on July 20, 1979 and expired on July 19, 1982. It is similar to the Plaza and Aurora agreements in that it contains no provision for arbitration of disputes between the parties, and is thus within the Court's jurisdiction pursuant to section 301

---

**8.** Defendant's Statement of Material Facts, paragraph 38, and Solomon Deposition, page 30.

**9.** We adopt the finding of the NLRB on this issue. See *Defendant's Statement of Material Facts,* paragraphs 31 and 32, and Defendant's Exhibit H (attached hereto).

**10.** We are not required to, nor do we pass on, the legitimacy of a discharge or other disciplinary action based on the result or findings of a polygraph examination. Since we need only determine whether a discharge has occurred, and have concluded that there has been no discharge, it is not necessary to address the "just cause" provision of the contract relative to terminations.

for determination of a possible breach of said contract. The agreement contains the following provision:

> Just and sufficient reason must be given for the dismissal of any projectionist employed under the terms of this agreement and the projectionist must receive two weeks notice in advance and in writing for his dismissal.

Plaintiffs Jon Sharpe and Cary Bock, the regular projectionists under the agreement, were laid off due to economic reasons on July 13 and July 15, 1982, respectively.[11] It is the Union's position that these plaintiffs were entitled to two weeks' notice of the layoff, and that the agreement was breached by the failure of the defendant to so notify the plaintiffs. Again, we determine that there has been no breach because there has been no termination which would require defendant to notify plaintiffs of the action being taken against them. "Layoff" means no more than the suspension of work of an individual employee—something less than a total discharge for the individual. *Brandenburg v. Capital Distributors Corp.,* 353 F.Supp. 115 (S.D.N.Y.1972).

> A discharge normally means the "termination of the employment relationship or loss of a position." (citations omitted). A layoff, on the other hand, is ordinarily a "period of temporary dismissal"; inherent in the term is the anticipation of recall. (citations omitted).

*CBS Inc. v. International Photographers,* 603 F.2d 1061, 1063 (2d Cir.1979). The Union was advised that there would be a layoff due to economic reasons.[12] Plaintiffs have not alleged, nor is there any evidence, that any other persons were hired subsequent to the layoffs to perform the same work formerly handled by the plaintiffs. Clearly, the action taken by the company cannot be construed as a discharge. The plaintiffs are subject to recall, and have not experienced the loss of their position. Accordingly, there has been no discharge, and

hence, no breach of the Sena Mall agreement. Plaintiffs' motion for summary judgment is thus hereby denied, and defendant's cross-motion for summary judgment granted, dismissing plaintiffs' complaint.

## APPENDIX

### STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE DISPUTE

Plaintiffs, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, Local 293, et al, herewith submit in support of their Motion for Summary Judgment that the following are material facts as to which there is no genuine dispute:

1. On December 18, 1979, Defendant as "Gulf States Theaters, Inc." executed a collective bargaining agreement (hereinafter "Plaza Agreement"—attached as Exhibit "A" *) with the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, Local 293, (hereinafter "Union") pertaining to employees of the Plaza Cinema Four Theater, located in New Orleans, Louisiana. (Defendant's Answer ¶ 5; Solomon Deposition p. 9).

2. The Plaza Agreement specifies a three year term and an expiration date of December 18, 1982. (Solomon Deposition pp. 9, 24).

3. The Plaza Agreement contains no provision for arbitration of disputes between the parties but does contain the following pertinent provision:

> G. No projectionist shall be dismissed except for cause, and he shall be given two weeks' advance notice, in writing for his dismissal. Such written advance notice shall not be furnished, however, when a projectionist

---

**11.** Defendant's Statement of Material Facts, paragraphs 9, 10.

**12.** Defendant's Statement of Material Facts, paragraphs 2, 3, 6.

* Exhibits deleted for purposes of publication.

■■■■■■■■■■■■■ is dismissed for dishonesty or drunkenness.

4. Plaintiffs, Andrew Cuccia, Joseph Cuccia and Alan Bock were employed at the Plaza Cinema Four Theater as regular projectionists under the Plaza Agreement until September 17, 1982. (Solomon Deposition p. 13; Defendants' Answer, ¶ 7).

5. On December 19, 1979, Defendant as "Gulf States Theaters, Inc." executed a collective bargaining agreement (hereinafter "Aurora Agreement"—attached as Exhibit "B") with the Union pertaining to employees of the Aurora Theater, located in Algiers, Louisiana. (Defendants' Answer, ¶ 10; Solomon Deposition p. 9).

6. The Aurora Agreement specifies a three year term and an expiration date of December 18, 1982. (Solomon Deposition pp. 9, 24).

7. The Aurora Agreement contains no provision for arbitration of disputes between the parties but does contain the following pertinent provisions:

N. Just and sufficient reason must be given for the dismissal of any projectionist employed under the terms of this agreement and the projectionist must receive two weeks notice in advance and in writing for dismissal. However, two weeks advance notice need not be given to an employee dismissed for either dishonesty or drunkenness, though written notification of the dismissal is nevertheless required.

8. Plaintiffs Joseph Aguilar and Lawrence Buras were employed at the Aurora Theater as regular projectionists under the Aurora Agreement until September 17, 1982. (Defendants' Answer ¶ 12).

9. On September 17, 1982, all of the aforementioned projectionists were placed on indefinite suspension from their jobs for refusing to submit to certain polygraph examinations administered on September 16, 1982. (Solomon Deposition pp. 23; 44–45).

10. It is not stipulated under either the Plaza or Aurora Agreement that employees are required to submit to polygraph testing.

11. Prior to the polygraph examination on September 16, 1982, none of the aforementioned projectionists had ever been required or requested to submit to a polygraph examination, despite the fact that all other employees of the Plaza and Aurora Theatres were examined on a regular basis. (Solomon Deposition p. 19; Hernandez Deposition pp. 13–14; Omes Deposition p. 19).

12. All non-bargaining unit personnel have been for many years required as a condition of hire to execute an agreement that they would submit to polygraph tests in connection with the requirements of the Gulf States Theatres Management Manual. (Defendants' Supplementary Answer to ¶ 30.)

13. None of the aforementioned projectionists signed Defendant's job application forms agreeing to voluntarily submit to a polygraph examination. (Solomon Deposition p. 14).

14. Projectionists Joseph Cuccia, Andrew Cuccia, Alan Bock, Joseph Aguilar and Lawrence Buras received no advance notice regarding the purpose of conducting the polygraph examinations, the qualifications of the polygraphers, or the subjects that would be covered. (Joseph Cuccia Deposition pp. 28–29; Omes Deposition p. 18).

15. The Polygraph examinations were conducted because of incidents of vandalism at various Gulf States Theatres. (Solomon Deposition p. 18).

16. No management personnel have any independent information that would implicate the union or any of its officers in the vandalism, nor do any have any reason to believe that the union or its officers were involved. (Hernandez Deposition pp. 26–27; Omes Deposition p. 29; Solomon Deposition pp. 27–28).

17. None of the aforementioned projectionists ever received any written notice of the reasons for the indefinite suspensions. (Solomon Deposition pp. 41–42).

18. On July 20, 1979, Gulf States Theaters, Inc. executed a collective bargaining agreement (hereinafter "Sena Agreement"

—attached as Exhibit "C") with the Union pertaining to employees of the Sena Mall Theater, in Metairie, Louisiana. (Defendants' Answer ¶ 20).

19. The Sena Agreement specifies a three year term and an expiration date of July 19, 1982. This Agreement was not renewed and therefore terminated on July 19, 1982.

20. The agreement contains no provision for arbitration of disputes between the parties, but does contain the following pertinent provisions:

C. The projectionist shall receive two (2) weeks vacation with pay after one full year of employment and three (3) weeks vacation with pay after five (5) years of continuous employment. If for any reason a projectionist must leave the employ of the theatre after six (6) months employment he shall be paid in cash for his vacation pay, same to be figured pro-rata upon the length of his employment, exception being dismissal for cause.

E. Just and sufficient reason must be given for the dismissal of any projectionist employed under the terms of this agreement and the projectionist must receive two weeks notice in advance and in writing for his dismissal. (Exceptions: Dishonesty or Drunkenness).

21. Plaintiffs John Sharpe and Cary Bock were employed at the Sena Mall Theater as regular projectionists under the Sena Agreement. (Defendants' Answer ¶ 22.)

22. On July 13, 1982, John Sharpe was indefinitely laid off due to economic reasons. (Defendants' Answer ¶ 25).

23. On July 15, 1982, Cary Bock was indefinitely laid off due to economic reasons. (Defendants' Answer ¶ 25).

24. Neither Sharpe nor Bock received any pro-rata payments for accumulated vacation time. (Solomon Deposition p. 48).

25. Neither Sharpe nor Bock received any written notice of the reasons for the indefinite layoffs. (Solomon Deposition pp. 45–46).

26. The projection booth at the Sena Mall has been operated by non-bargaining unit or other personnel since July 13, 1983. (Defendants' Answer ¶ 27).

Respectfully submitted,
BARKER, BOUDREAUX, LAMY, GARDNER & FOLEY
/s/ Marie Healey
Marie Healey
/s/ Robert H. Urann
Robert H. Urann
1400 Richards Building
837 Gravier Street
New Orleans, Louisiana 70112
(504) 586–9395

## STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE DISPUTE

Defendants, Gulf International Cinema Corporation, d/b/a Gulf States Theatres and Gulf States Theatres, Inc., a corporation, herewith submit in support of their cross motion for Summary Judgment that the following are material facts to which there is no genuine dispute:

1. Anticipating the expiration of the Collective Bargaining Agreement between Defendants and Plaintiff Union on July 19, 1982, attorneys for Defendants commenced conferences with attorneys for Plaintiffs, by telephone, on June 10, 1982. (See Affidavit of Molony)

2. There were subsequent telephone conferences between the attorneys for the parties on June 17, June 21, June 29, July 6 and July 7th. Union Business Agent Joseph Cuccia and attorneys for both parties met in person to confer on June 22nd. (See Affidavit of Molony)

3. In the course of these conferences Defendants' attorneys indicated to Plaintiffs and Plaintiffs' attorneys that there would be a lay-off of projectionists at the Sena Mall Theater due to economic reasons. (See Affidavit of Molony)

4. On July 8, 1982 at Gulf States Theatres' Showtown Drive-In in Baton Rouge roofing tacks were distributed in the drive-

way causing damage to theater patrons' automobiles which were repaired by Defendants for a sum totaling $3,855.17. One patron claimed to have stepped on a roofing tack and contracted an infection. This claim against Defendants is still pending. (See Affidavit of Solomon)

5. On July 10, 1982 roofing tacks were distributed at the Gulf States Theatres' Sena Mall Theater in Metairie and the Jefferson Drive-In in New Orleans involving repairs to the patrons' vehicles paid for by Defendants in the amount of $386.72 at the Sena Mall and $1,050.09 at the Jefferson Drive-In. (See Affidavit of Solomon)

6. On July 13, 1982 Plaintiffs' Local 293 represented by Plaintiff Joseph Cuccia as its Business Agent, Roy Kammer as its Secretary and Union counsel met to negotiate the Sena Mall contract with Defendants and their counsel. Defendants reiterated its position that there would be a lay-off due to economic reasons of projectionists at the Sena Mall. (See Affidavit of Molony)

7. In the course of their negotiations on July 13, 1982, the Union Business Agent, Mr. Joseph Cuccia, advised Defendants' management that he was, "going to kick your heads in". (See Affidavits of Molony and Solomon)

8. Despite proposals and counter-proposals by both parties there was no agreement reached by the parties as to a new Collective Bargaining Agreement involving the projectionists at the Sena Mall Theater. (See Affidavit of Molony)

9. On Tuesday, July 13, 1982 Plaintiff John Sharpe, a Union projectionist at the Sena Mall Theater, was laid off for economic reasons. (Defendants' Answer, Article 22, Plaintiff's Statement of Material Facts, Nos. 21, 22).

10. On Thursday, July 15, 1982 Plaintiff Cary Bock, a Union projectionist at the Sena Mall Theater, was laid off by the Defendants for economic reasons. (Defendants' Answer, Article 25, Plaintiff's Statement of Material Facts, Nos. 21, 23).

11. On July 21, 1982 Plaintiff Local 293 filed Unfair Labor Practice Charges at the National Labor Relations Board docketed as Case No. 15–CA–8653, a copy of which is annexed hereto as Exhibit "A".

12. Defendants responded to the Charges before the National Labor Relations Board as set out in correspondence addressed to the Labor Board dated July 27, 1982, a copy of which is attached hereto as Exhibit "B".

13. On July 28, 1982 at Gulf States Theatres Hammond Square Twin Theater in Hammond, Louisiana, the auditorium screen was slashed and damaged beyond repair. Defendants' cost to replace the screen was $464.00. (See Affidavit of Solomon)

14. On July 29, 1982 at Gulf States Theatres Surfside Cinema in Biloxi, Mississippi, the screen was slashed and damaged beyond repair and forty theater seats were cut both in the backrest and on the seat bottoms. The cost to replace the screen to the Defendants was $788.00 and to replace the damaged theater seats was $800.00. (See Affidavit of Solomon)

15. On July 31, 1982 at the corporate headquarters of Gulf States Theatres, 510 O'Keefe Avenue in New Orleans, Louisiana, two large plate glass windows were shattered at a replacement cost of $582.09. Picketing by Plaintiffs of 510 O'Keefe Avenue was taking place during this period of time. (See Affidavit of Solomon)

16. On August 9, 1982 the National Labor Relations Board, acting through its Regional Director in New Orleans, issued a letter advising that it would refuse to issue a complaint in connection with 15–CA–8653 involving the negotiations at the Sena Mall and the lay-off of Cary Bock and John Sharpe. The August 9, 1982 refusal to issue a complaint is attached hereto and identified as Exhibit "C".

17. On August 24, 1982, at which time picketing by the Plaintiffs was continuing at the corporate headquarters of Gulf States Theatres, 510 O'Keefe Avenue in New Orleans, Louisiana, two large plate glass windows at the corporate headquarters were penetrated by steel ball bearings

and the locks to the doors opening on the street were filled with liquid solder, all requiring repairs in the amount of $1500.00. (See Affidavit of Solomon)

18. On August 26, 1982 two auditorium screens were damaged beyond repair at Gulf States Theatres University Twin Cinema in Hammond, Louisiana and on the same date another auditorium screen was again (for the second time) slashed and damaged beyond repair at the Gulf States Theatres Hammond Square Twin Theater. (See Affidavit of Solomon)

19. On August 30, 1982 an automobile belonging to the manager of Gulf States Theatres Town and Country Twin Theater in Hammond, Louisiana had all of its windows and windshields shattered while parked at the theater and the same manager received telephone threats against his life throughout the night. (See Affidavit of Solomon)

20. During the time that Defendants were experiencing the vandalism directed against their theaters in Baton Rouge, Biloxi, Hammond, Metairie and their offices in New Orleans, no competitor of Defendants experienced any similar problems. (See Affidavit of Solomon)

21. Defendant had routinely administered polygraph tests as part of a published management policy in an effort to control occasional losses of cash at its various theaters. The company policy has printed and distributed in its Manager Operators' Manual, a copy of which is annexed hereto and identified as Exhibit "D". (See Affidavit of Solomon)

22. Defendants decided to administer polygraphs to all employees in the various locations involved with the vandalism in an effort to determine if there was any knowledge of perpetrators of the vandalism. (See Affidavit of Solomon)

23. The vandalism stopped when the company let it be known that the polygraph tests were being administered (Solomon deposition, pp. 27).

24. On September 9, 1982 the company began testing employees at the various the-

aters that had experienced the vandalism and thereafter no vandalism occurred. (Solomon deposition pp. 27, 28)

25. The company attempted to test all employees, including executive officers, with the polygraph who were employed at its Gulf States theaters where vandalism had occurred and its corporate headquarters, both Union and non-Union in accordance with the following schedule:

September 9, 1982 27 polygraph tests Hammond, Louisiana

September 10, 1982 20 polygraph tests Biloxi, Mississippi

September 16, 1982 28 polygraph tests New Orleans, La.

September 17, 1982 27 polygraph tests New Orleans, La.

September 20, 1982 12 polygraph tests Metairie, Louisiana

September 22, 1982 28 polygraph tests Baton Rouge, La.

September 23, 1982 31 polygraph tests Baton Rouge, La.

(See Affidavit of Solomon)

26. The polygraph tests were administered by polygraph operators, licensed by the State of Louisiana, Malcolm Cheramie and Thomas Woodhal. (See Affidavit of Solomon)

27. Union projectionists at Biloxi and Baton Rouge took the polygraph without objection, only the named individual Plaintiffs, members of Local 293 refused and such refusal was documented by attorneys for Plaintiffs by certified mail dated September 14, 1982, copy of which is attached hereto and identified as Exhibit "E". (See Affidavit of Solomon)

28. After refusing to take the polygraph test the named Plaintiffs, members of Local 293 were suspended on September 17, 1982 (Statement No. 9 of Material Facts submitted by the Plaintiffs)

29. On September 21, 1982 Plaintiff Local 293 filed Unfair Labor Practice charges with the National Labor Relations Board, docketed as 15–CA–8723, alleging, inter alia, that the Defendants had violated the National Labor Relations Act by reason

of having, "suspended indefinitely and/or terminated the employment of the below named projector operators . . .", which charge is attached hereto and identified as Exhibit "F".

30. Defendants responded to the charge with a written explanation of the facts dated October 22, 1982, a copy of which is annexed hereto and identified as Exhibit "G".

31. After investigation, on October 25, 1982 the National Labor Relations Board through its acting Regional Director, advised (a copy annexed and identified as Exhibit "H") the counsel for Plaintiffs that the Unfair Labor Practice charges were not warranted as the employer had, "instituted such requirement for valid business considerations following a period of vandalism at several of the employers' theaters".

32. The National Labor Relations Board, Fifteenth Region, further stated: "Although it (the Union) protested the employers' decision to use polygraph tests, the Union made no demand for bargaining over the matter. Therefore, the employer lawfully adopted the polygraph requirement as a condition of continued employment and did not violate Section 8(a)(1), (3) or (4) of the Act by suspending employees who refused to submit to the test. (See Exhibit "H")

33. The National Labor Relations Board through the Fifteenth Region, also determined that:

> The evidence does not establish a lock-out but rather a suspension of employees for refusing to submit to the polygraph test, which, as noted, was lawfully instituted. Further, the "just cause" provision of the contract has not be abrogated *since the employees have not been terminated.* (Emphasis supplied). Exhibit "H"

The Union appealed this decision on November 18th to the Office of the General Counsel of the National Labor Relations Board and on January 25th the Office of the General Counsel denied the Appeal.

The Appeal and the denial of the Appeal is attached and identified as Globo Exhibit "I".

35. It is not stipulated under either the Plaza or the Aurora Collective Bargaining Agreements that employees shall not be required to submit to polygraph testing. (See Plaintiff's Exhibit "A" and "B")

36. It is not stipulated under either the Plaza or the Aurora Collective Bargaining Agreements that there is any limitation or restriction on the right of the employer to engage in disciplinary action including suspension under appropriate circumstances. (See Plaintiff's Exhibit "A" and "B")

37. One of the suspended projectionists, Plaintiff Lawrence Buras, elected to take the polygraph test on June 27, 1983 and is now therefore working again as a projectionist for Defendant Gulf States Theatres. (Plaintiffs note at page six of their Memorandum in Support of Motion for Summary Judgment, "Lawrence Buras has settled his grievance with Gulf States and therefore makes no claims herein for damages." Plaintiff has failed to make this a statement of *material fact,* mentioning it only in his memorandum and therefore Defendant calls it to the attention of the Court as a material fact).

38. Suspended employees who have not been employed by other employers providing hospitalization insurance remain on Gulf States payroll and receive its group insurance coverage. (Solomon deposition, pp. 30, 31).

Respectfully submitted:
MOLONY, NOLAN, NORTH
AND RIESS

LAWRENCE J. MOLONY

ERNEST A. BURGUIERES
Suite 1300 One Lakeway Center
3900 North Causeway Blvd.
Metairie, Louisiana 70002
832–0999

# NATIONAL LABOR RELATIONS BOARD

**REGION 15**

[SEAL]    **Ten-O-One Building, Suite 2700**

**1001 Howard Avenue**

**New Orleans, LA   70113**          Telephone: 504/589–6396

October 25, 1982

RE:  Gulf States Theaters, Inc.
New Orleans, Louisiana
Case No. 15–CA–8723

Marie Healey, Esquire
Barker, Boudreaux, Lamy,
Gardner & Foley
1400 Richards Building
837 Gravier Street
New Orleans, LA 70112

Dear Ms. Healey:

The above-captioned case charging a violation under Section 8 of the National Labor Relations Act, as amended, has been carefully investigated and considered.

As a result of the investigation, it appears that further proceedings on the charge are not warranted. The evidence obtain during the investigation was insufficient to establish that the Employer had an unlawful or discriminatory motive in requiring unit employees, as a condition of continued employment, to submit to polygraph tests. Rather, the Employer instituted such requirement for valid business considerations following a period of vandalism at several of Employer's theaters. Although it protested the Employer's decision to use polygraph tests, the Union made no demand for bargaining over the matter. Therefore, the Employer lawfully adopted the polygraph requirement as a condition of continued employment and did not violate Section 8(a)(1), (3) or (4) of the Act by suspending employees who refused to submit to the test. *Austin-Berryhill*, Inc., 246 NLRB 1139. With respect to the specific allegation that employee Joseph Cuccia was disciplined al-legedly because he gave testimony under the Act, the investigation failed to disclose evidence sufficient to support this allegation.

It was further concluded that the Employer did not violated Section 8(a)(5) of the Act by allegedly "locking out" for refusing to take the polygraph tests and by allegedly abrogating the "just cause" provision of the contract. The evidence does not establish a lock out but rather a suspension of employees for refusing to submit to the polygraph test which, as noted, was lawfully instituted. Further, the "just cause" provision of the contract has not been abrogated since the employees have not been terminated.

Moreover, the Region concluded that the Employer's use of managerial and/or other non-unit employees to perform unit work may arguable be a breach of contract, but does not amount to a violation of Section 8(a)(5) of the Act under the circumstances presented in this case. I am, therefore, refusing to issue a complaint in this matter.

Very truly yours,
Fallon W. Bentz
Acting Regional Director

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

cc:  International Alliance of Theatrical
Stage Employees & Moving Picture
Machine Operators

**1406**

Attn:  Joseph Cuccia, Business Agent
7640 Lehigh
New Orleans, LA 70127

Gulf States Theaters, Inc.
510 O'Keefe Avenue
New Orleans, LA 70113

Lawrence J. Molony, Esquire
Molony, Nolan, North & Riess
1300 One Lakeway Center
3900 N. Causeway Blvd.
Metairie, LA 70002