WILLIAM T. HERMAN, Plaintiff-Appellant, v. POWER MAINTENANCE AND CONSTRUCTORS, LLC, Defendant-Appellee.

Fourth District   No. 4—08—0509

Opinion filed February 18, 2009.

Richard M. Manzella (argued), of Law Office of Richard M. Manzella, of Bloomington, for appellant.

Stephen R. Kaufmann (argued), of Hepler, Broom, MacDonald, Hebrank, True & Noce, LLC, of Springfield, for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiff, William T. Herman, brought a tort action against defendant, Power Maintenance & Constructors, LLC, for discharging him, or refusing to recall him, in retaliation for his filing a workers' compensation claim. See 820 ILCS 305/4(h) (West 2004). The trial court entered summary judgment in defendant's favor, and plaintiff appeals.

Defendant laid plaintiff off because of medical restrictions resulting from a work-related injury, for which he received workers' compensation benefits. Later, after plaintiff recovered from the injury and sought to go back to work, defendant refused to recall him. Defendant's stated reason for the refusal was that his work had been unsatisfactory. All of his performance evaluations, however, were favorable. We find a genuine issue as to whether defendant's stated reason for refusing to recall plaintiff—unsatisfactory job performance—was a

pretext for retaliating against him because of the workers' compensation claim. Therefore, we reverse the summary judgment that the trial court entered on June 9, 2008, and we remand this case for further proceedings.

## I. BACKGROUND

In the original version of his complaint, which he filed on October 26, 2006, plaintiff alleged as follows. On November 8, 2005, in the course of his employment with defendant, he sustained an injury. He gave defendant timely notice of the work-related accident. On November 15, 2005, defendant terminated his employment in retaliation for his exercise of a right granted by the Workers' Compensation Act (Act) (820 ILCS 305/1 through 30 (West 2004)).

On October 19, 2007, defendant's attorney took plaintiff's deposition. Plaintiff testified he was in his third year of apprenticeship as a boilermaker. He was a member of Boilermakers Local Union No. 60, of which Edmond Hebert was the business agent. Through the local union, plaintiff was hired out for various jobs. On November 8, 2005, he sustained an injury while working for defendant, and he filed a workers' compensation claim. Defendant paid him workers' compensation benefits, and as of the date of his deposition, the workers' compensation claim was settled.

Defendant's attorney questioned plaintiff regarding certain allegations in the complaint:

"Q. Paragraph 5 of the complaint states, 'Prior to November 15th of 2005, the plaintiff exercised a right granted under the *** Act,' and then gives a citation. Is that true, to your knowledge?

A. I believe so, yes.

Q. And then it says, 'On November 15th of 2005, the defendant terminated the plaintiff from his employment with the defendant.' That's [p]aragraph 6. Do you believe that to be true?

A. Yes.

Q. Then the next—[p]aragraph 7 says, 'Said termination of the plaintiff's employment by the defendant was in retaliation for the plaintiff's exercise of a right granted under the Act[ ] and thus was a violation of [s]ection [4(h)] of the Act [(820 ILCS 305/4(h) (West 2006))] and a violation of clearly mandated public policy.'

Do you believe that [defendant] terminated your employment in retaliation for your filing a workers['] comp[ensation] claim?

A. I don't believe at that time that that's what the cause was. I was laid off due to the parameter of my injuries and what I couldn't do and what I could do. At that time[,] I don't believe [so], no.

Q. All right. And to be clear about what you just testified to, you don't believe that on November 15th of 2005, *** your employment

with [defendant] was terminated in retaliation for your filing a workers['] comp[ensation] claim; is that correct?

A. That's correct.

Q. The—what were the reasons why your employment was terminated with [defendant] at that time?

A. Due to my doctor's restrictions, certain jobs I could do. Usually[,] in the [u]nion[,] there's no light duty, so they would rather just lay you off and go on with your work[ers'] comp[ensation] claim or whatever.

Q. Okay. So you would agree that as of November 15th of 2005, *** you had some duty restrictions, some work[-]duty restrictions imposed by your doctor, correct?

A. That's correct.

Q. And you would agree that there were—they didn't have work for you on that date[,] with your restrictions?

A. That's correct."

In view of plaintiff's belief that retaliating against him for filing a workers' compensation claim was not, in fact, defendant's motivation in laying him off on November 15, 2005, defendant's attorney asked plaintiff how, in his opinion, defendant had wronged him. Plaintiff answered that defendant had sent letters to Hebert refusing to recall plaintiff on the spurious ground that plaintiff's work performance had been substandard. (According to the transcript of the deposition, these letters were marked as exhibit Nos. 3, 4, and 5, but they do not appear to be in the record on appeal.) Plaintiff testified:

"A. *** [T]he first letter[,] received March 9th[,] says[,] ['W]e found his productivity and the quality of his work to be below the standards we have come to expect from Local 60 members.['] That's very untrue.

Q. ***

Your complaint against my client[,] at this time[,] is that when they say that they're not going to hire you because you're 'not competent enough to work on our projects,' which is language from [e]xhibit [No.] 4, you believe that to be inaccurate?

A. That's very correct."

Plaintiff had brought with him, to his deposition, the performance evaluations he received from May to November 2005, while he was working for defendant. According to these evaluations, he never was absent or late. In the categories of initiative, workmanship, ability to learn, and conduct on the job, he never received less than an average rating, and usually he received a good or an excellent rating. His final performance evaluation, for November 2005, praised him as having "initiative" and "good ability." The evaluation forms are entitled "Great Lakes Area Boilermaker Apprentice Monthly Work Report,"

and at the bottom, they tell the supervisor: "An accurate *written* assessment of the apprentice is vital for their complete evaluation!" (Emphasis in original.)

Plaintiff testified that since defendant laid him off in November 2005, he had worked on other jobs as a boilermaker but because of defendant's refusal to recall him, he had endured some periods of unemployment and a loss of income. According to plaintiff, defendant hired other boilermakers out of the local union while declining to recall him. He testified: "I was not eligible for rehire [by defendant]. I call that [']terminated.['] "

On December 3, 2007, defendant filed a motion for summary judgment. Defendant argued it was entitled to summary judgment because plaintiff had made three admissions in his deposition that were fatal to his case. Plaintiff had admitted that (1) defendant laid him off rather than discharged him; (2) in laying him off, defendant had no intention of retaliating against him for exercising his rights under the Act; and (3) defendant had a valid, nonpretextual reason for laying him off, namely, his physical inability to perform the work.

In support of its motion for summary judgment, defendant presented not only plaintiff's deposition but also an affidavit by Tom Cassity. In his affidavit, Cassity stated he was defendant's construction manager at the Vermilion Power Station near Danville, Illinois, and that on November 15, 2005, defendant laid plaintiff off rather than discharged him. Attached to Cassity's affidavit was a termination slip, dated November 15, 2005, indicating that the reason for terminating plaintiff's employment was a "reduction in force." After stating that reason, the termination slip added, at the bottom: "No work available within parameters of doctor's restrictions—see attached." Attached to the termination slip was a handwritten note, dated November 14, 2005, in which a physician, John D. Warrington, prohibited plaintiff from lifting over 10 pounds; sitting or standing for more than 10 minutes at a time without changing position; pushing or pulling more than 10 pounds; or bending, stooping, or crawling. Warrington diagnosed plaintiff as suffering from severe, recurrent lumbosacral strain.

On February 13, 2007, the trial court held a hearing on defendant's motion for summary judgment. Plaintiff's attorney argued that even though, on November 15, 2005, defendant ostensibly laid plaintiff off rather than discharged him, one could infer that, as of that date, defendant decided that plaintiff never would work for defendant again and that the reason for the decision was plaintiff's claim for workers' compensation benefits. The problem the motion for summary judgment identified could be solved, plaintiff's attorney argued, by amend-

ing the complaint so as to allege that the discharge occurred after November 15, 2005. He told the court:

"[Plaintiff] didn't work from November 15th to the date he reported for work again, and he was supposedly fired due to incompetence. Nothing happened to support a finding of incompetence during the time he didn't work, quite clearly, so our argument is November 15, 2005, is the accrual date of his action. Now, it's true his damages might be cut off until he's able to work, but the accrual date is a decision that [defendant] made to find him essentially this: 'Mr. Herman, you're gone, and you're never coming back.' And[,] therefore, Your Honor, I stand before you today to make an argument that although not perhaps jumping off the page, [it] can be found, if Your Honor reads the deposition testimony[ ] and reads [p]aragraph 6 [of the complaint], that[,] in fact[,] the effective date of Mr. Herman's discharge was November 15, 2005."

The trial court granted defendant's motion for summary judgment but gave plaintiff leave to file an amended complaint within 14 days. See 735 ILCS 5/2—1005(g) (West 2006) ("Before or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms").

On February 27, 2008, plaintiff filed an amended complaint, in which he alleged as follows. On November 8, 2005, he sustained an injury in the course of his employment with defendant. He gave defendant timely notice of this work-related accident. Before the accident, he performed his work in a satisfactory manner, as evidenced by the performance evaluations attached to his amended complaint. Plaintiff further alleged:

"10. Plaintiff presented a return-to-work slip to [d]efendant on November 15, 2005, and although [d]efendant stated that it did not have available work at that time[,] [d]efendant also made a decision[,] sometime after this date[,] to permanently discharge [p]laintiff and forever bar [p]laintiff from all future work for [d]efendant and[,] in furtherance of such a plan[,] provided a pretextual reason for its actions: namely, that [p]laintiff's work was unsatisfactory.

11. Defendant did, in fact, discharge plaintiff.

12. *** [A]lthough [d]efendant did lay[ ]off other boilermakers at or around the time *** [d]efendant discharged [p]laintiff, one or more [of the other] boilermakers continued to perform the work that [p]laintiff would have performed but for [d]efendant's retaliatory action."

Plaintiff further alleged, in his amended complaint, that defendant had a policy or practice of retaliating against employees for exercising their rights under the Act. He attached, and incorporated by refer-

ence, an affidavit by Steve Wondolowfski and an affidavit by Scott A. Herman. Wondolowfski stated in his affidavit that he was injured on the job in late 2005 while working as a boilermaker for defendant. He filed a workers' compensation claim, and on January 6, 2006, when his doctor released him to return to work and he provided the physician's release to defendant, defendant discharged him. Defendant told his union representatives not to return him to work because he was a " 'safety risk.' " Before the discharge, he never was cited or warned for engaging in unsafe work practices.

Herman described a similar experience in his affidavit. On April 24, 2006, he was injured on the job while working as a boilermaker for defendant. He filed a workers' compensation claim. On June 6, 2006, his physician released him to return to work, and when he presented the physician's release to defendant, defendant discharged him, even though he never had been cited or warned for unsafe work practices and he had performed at a satisfactory level.

On March 12, 2008, defendant filed a combined motion pursuant to section 2—619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619.1 (West 2006)). Under section 2—1005 of the Code (735 ILCS 5/2—1005 (West 2006)), defendant moved for summary judgment on the basis of the following reasoning. In paragraphs 10 and 11 of the amended complaint, plaintiff alleged that defendant "discharged" him. Because plaintiff alleged a retaliatory discharge, he could not allege that defendant had refused to recall or rehire him (see *Webb v. County of Cook*, 275 Ill. App. 3d 674, 677, 656 N.E.2d 85, 87-88 (1995)). In the hearing on defendant's previous motion for summary judgment, plaintiff "judicially admitted, through his counsel, that his cause of action accrued on November 15, 2005." If plaintiff had a claim for retaliatory discharge, the claim would have accrued on the date of the discharge. The trial court had already decided, by its previous summary judgment, that plaintiff had no claim for a retaliatory discharge occurring on November 15, 2005. Assuming, for the sake of argument, that plaintiff actually was alleging a retaliatory refusal to recall or rehire him, his counsel's "judicial admission," together with the previous summary judgment, was dispositive: plaintiff's counsel admitted that plaintiff's cause of action accrued on November 15, 2005, and the previous summary judgment established that plaintiff had no cause of action for retaliation occurring on that date.

Under section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2006)), defendant moved, alternatively, for dismissal of the amended complaint for the same reasons. He argued that even if one accepted as true the allegations in the amended complaint, "the combination of [p]laintiff's admissions as to the date on which his

cause of action accrued, the application of the law of accrual of actions under [s]ection 4(h) of the Act [(820 ILCS 305/4(h) (West 2004))], and [the] previous [summary judgment] provide[d] sufficient 'affirmative matter' " to defeat the present claim.

In his response to defendant's combined motion, plaintiff argued that a statement of opinion regarding the date a cause of action accrued was a legal conclusion, not a statement "regarding a concrete fact within [the] party's peculiar knowledge." *Doyle v. White Metal Rolling & Stamping Corp.*, 249 Ill. App. 3d 370, 386, 618 N.E.2d 909, 921 (1993). Plaintiff's attorney said he "went too far" in arguing the accrual date was November 15, 2005. In any event, by entering a summary judgment that plaintiff, in fact, had no cause of action for a retaliatory discharge occurring on November 15, 2005, the court necessarily ruled that, contrary to the misguided argument plaintiff's attorney made in the first summary-judgment hearing, no cause of action accrued on that date. Plaintiff now argued that he "could prevail on his claim of retaliatory discharge if," as he alleged in his amended complaint, "he *could* present evidence that at some point *after* November 15, 2005, his layoff was 'converted into an actual discharge.' " (Emphases in original.) *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 709 (7th Cir. 2004).

On June 9, 2008, the trial court entered the following order:

"The [c]ourt finds that the [p]laintiff's claim is for retaliatory discharge[ ] rather than retaliatory failure to recall or rehire. The [c]ourt has previously granted [s]ummary [j]udgment to the [d]efendant based upon [p]laintiff's admissions in his deposition that he was not discharged on November 15, 2005[,] in retaliation for filing a workers' compensation claim. The [p]laintiff has admitted that November 15, 2005[,] was the accrual date for his retaliatory discharge cause of action. The [c]ourt views the [p]laintiff's admissions as dispositive.

Accordingly, the [c]ourt grants the [d]efendant's [m]otion for [s]ummary [j]udgment as to [p]laintiff's [f]irst [a]mended [c]omplaint pursuant to [section 2—1005 of the Code (735 ILCS 5/2—1005 (West 2006))]. The court notes that the [f]irst [a]mended [c]omplaint is also subject to dismissal pursuant to [section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2006))]."

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

Upon motion, the trial court shall "render[ ] [a summary judgment] without delay if the pleadings, depositions, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2006). Thus, in our *de novo* review (*Viking Construction Management, Inc. v. Liberty Mutual Insurance Co.*, 358 Ill. App. 3d 34, 41, 831 N.E.2d 1, 6 (2005)), we will affirm a summary judgment only if we find two propositions to be true: (1) the record reveals no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law (735 ILCS 5/2—1005(c) (West 2006)). We look at the evidence in a light most favorable to the nonmoving party, meaning that we draw inferences in favor of the nonmoving party whenever one could reasonably do so. *Webb v. Ambulance Service Corp.* 262 Ill. App. 3d 1039, 1042, 635 N.E.2d 643, 645 (1994). An issue is "genuine" if the record contains evidence to support the position of the nonmoving party. *Caponi v. Larry's 66*, 236 Ill. App. 3d 660, 670, 601 N.E.2d 1347, 1354 (1992).

### B. The Alleged Judicial Admission of Plaintiff's Attorney

■ A judicial admission binds the party who made the admission. If the admission is merely an evidentiary admission (instead of a judicial admission), the party may contradict or explain it. *Williams Nationalease, Ltd. v. Motter*, 271 Ill. App. 3d 594, 597, 648 N.E.2d 614, 616-17 (1995). Whether an admission is a judicial admission or an evidentiary admission is a question of law, which we decide *de novo*. *Elliott v. Industrial Comm'n*, 303 Ill. App. 3d 185, 187, 707 N.E.2d 228, 230 (1999).

In cases in which attorneys made judicial admissions, the trial court entered a judgment consistent with the judicial admission. For example, in *Lowe v. Kang*, 167 Ill. App. 3d 772, 780, 521 N.E.2d 1245, 1250 (1988), defense counsel admitted, in his closing argument, that the defendant was at fault for the accident; accordingly, the trial court directed a verdict in the plaintiff's favor on the issue of liability (*Lowe*, 167 Ill. App. 3d at 775, 521 N.E.2d at 1247). In *Darling v. Charleston Community Memorial Hospital*, 50 Ill. App. 2d 253, 327-28, 200 N.E.2d 149, 186 (1964), defense counsel stated, during trial, that the defendant was not accusing the plaintiff of doing anything to cause the loss of his own leg; accordingly, the trial court directed a verdict in the plaintiff's favor on the issue of contributory negligence. In the present case, plaintiff's attorney made an argument to the trial court that plaintiff's cause of action accrued on November 15, 2005. It seems remarkable that defendant wishes us to treat that proposition as an incontrovertible judicial fact. If plaintiff's cause of action under section 4(h) (820 ILCS 305/4(h) (West 2004)) accrued on November 15,

2005, then, of course, it would follow that he *has* a cause of action under section 4(h). The trial court, however, has entered two summary judgments to the contrary, *i.e.*, that he has no cause of action under section 4(h). We are aware of no case in which a court used the doctrine of judicial admissions to bind a party to a proposition that was at odds with the judgment.

If plaintiff's attorney had written, in the original version of the unverified complaint, that plaintiff's cause of action accrued on November 15, 2005, case law would have required the trial court to treat that statement as, at best, an evidentiary admission. See *Chavez v. Watts*, 161 Ill. App. 3d 664, 673, 515 N.E.2d 146, 152 (1987); M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802.11, at 781 (7th ed. 1999) ("Admissions made in an unverified pleading subsequently amended are ordinary evidentiary admissions subject to being controverted"). (We say "at best" because an attorney's statement of opinion about the accrual date of a cause of action normally is not treated as evidence at all; it more resembles a legal argument.) Logically, it would seem to follow that if plaintiff's attorney spoke, rather than wrote in the original complaint, that the cause of action accrued on November 15, 2005, the statement would not be a judicial admission when plaintiff repleaded.

■ Because the purposes of the doctrine of judicial admissions are to remove the temptation to commit perjury (*In re Estate of Rennick*, 181 Ill. 2d 395, 407, 692 N.E.2d 1150, 1156 (1998)) and to hold a party to its waiver of proof on a factual issue at trial (*Lowe*, 167 Ill. App. 3d at 776, 521 N.E.2d at 1247), a court should not apply the doctrine to an attorney's statement of legal opinion in a summary judgment proceeding, especially if the opinion was manifestly incorrect within the context of the statement itself (see *Williams v. Cahill*, 258 Ill. App. 3d 822, 826, 629 N.E.2d 1175, 1179 (1994) ("Viewing the plaintiff's counsel's comments in context, we find that they were in effect no more than an opinion and should not be considered a binding admission"); *Harrington v. Kay*, 136 Ill. App. 3d 561, 568, 483 N.E.2d 560, 566 (1985) ("A judicial admission cannot be a matter of *** inference")). Because penalizing confusion or an honest mistake is not among the purposes of the doctrine of judicial admissions, it must appear that the party making the statement had no reasonable possibility of being mistaken in order for the statement to qualify as a judicial admission. *Trapkus v. Edstrom's, Inc.*, 140 Ill. App. 3d 720, 723, 489 N.E.2d 340, 343 (1986). It was obvious, at the time, that plaintiff's attorney was mistaken in his argument as to when the cause of action accrued. He argued that plaintiff's cause of action accrued when defendant made the decision not to call him back to work. That argu-

ment clearly was incorrect. A party's cause of action accrues when the party knows or reasonably should know of an injury and that the injury was wrongfully caused. *Clay v. Kuhl*, 189 Ill. 2d 603, 608, 727 N.E.2d 217, 220 (2000). Plaintiff's cause of action would have accrued when plaintiff learned, or reasonably should have known, of defendant's decision to retaliate against him by refusing to recall him to work—not when defendant made the decision to do so. The date of accrual could not have been November 15, 2005, because, as both parties agree, defendant laid plaintiff off on that date because of the medical restrictions, saying nothing to him about its willingness or unwillingness to recall him in the future. It was not until some four months later that defendant wrote the local union, declining to recall plaintiff on the ground that he was incompetent.

For all these reasons, we reject the argument that plaintiff's attorney made a judicial admission by arguing to the trial court, in the hearing on the first motion for summary judgment, that plaintiff's cause of action accrued on November 15, 2005.

## B. Discharge or Refusal To Recall

In its order granting defendant's second motion for summary judgment, the trial court found that "the [p]laintiff's claim [was] for retaliatory discharge[ ] rather than retaliatory failure to recall or rehire." Plaintiff does indeed allege in his amended complaint that defendant "discharged" him. When we construe the amended complaint, however, in a light most favorable to plaintiff (see *Malmloff v. County Treasurer*, 367 Ill. App. 3d 760, 764, 856 N.E.2d 48, 51 (2006)), he appears to be alleging that defendant first laid him off for medical reasons and then, in retaliation for his workers' compensation claim, converted the layoff into a discharge, stating, as a pretext, that his work had been unsatisfactory.

■ Section 4(h) of the Act provides: "It shall be unlawful for any employer *** to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity[,] an employee because of the exercise of his or her rights or remedies granted to him or her by this Act." 820 ILCS 305/4(h) (West 2004). The First District has interpreted section 4(h) as creating three alternative causes of action:

> "An employee, whether regular or seasonal, who has been fired by his or her employer may generally only sue for retaliatory discharge. We distinguish the foregoing cause of action from those available where the employee has not, in fact, been fired. Where the employee has not been fired, a seasonal employee may only sue for retaliatory failure to rehire, and a regular employee on leave or temporary layoff may only sue for retaliatory failure to recall."

*Webb*, 275 Ill. App. 3d at 678, 656 N.E.2d at 88.

Labor law distinguishes between a layoff and a discharge, and throughout this proceeding, the parties have made the same distinction. A layoff is a temporary dismissal; a discharge is a permanent dismissal. *Employment Security Comm'n v. General Motors Corp.*, 32 Mich. App. 642, 647-48, 189 N.W.2d 74, 77 (1971). In a layoff, the employment is merely suspended, and the employee ordinarily is entitled to a recall when the temporary circumstances necessitating the layoff no longer exist. *Employment Security Comm'n*, 32 Mich. App. at 648, 189 N.W.2d at 77. A discharge completely and finally terminates the employment relationship—the employee is fired and loses his or her position. *Employment Security Comm'n*, 32 Mich. App. at 647, 189 N.W.2d at 77. A layoff does not encompass a discharge for unsatisfactory performance. *Employment Security Comm'n*, 32 Mich. App. at 648, 189 N.W.2d at 77-78; see also *International Alliance of Theatrical Stage Employees v. Gulf International Cinema Corp.*, 568 F. Supp. 1396, 1399 (E.D. La. 1983); *CBS Inc. v. International Photographers of the Motion Picture Industries, Local 644*, 603 F.2d 1061, 1063 (2d Cir. 1979).

Both Cassity and plaintiff have stated, under oath, that defendant laid off, rather than discharged, plaintiff on November 15, 2005. As plaintiff admitted in his deposition, the layoff was legitimate because the doctor's restrictions rendered him incapable of performing the duties of a boilermaker. See *Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis*, 229 Ill. App. 3d 680, 688, 593 N.E.2d 1070, 1075 (1992) (Illinois law does not require an employer to retain an employee who is medically unable to do the work). During the period of the layoff, plaintiff sought to go back to work for defendant, and defendant responded on March 9, 2006, with a letter to the local union stating that henceforth defendant rejected plaintiff as an employee because his performance had been substandard.

Was this letter of March 9, 2006, a discharge, or was it a refusal to recall plaintiff? Plainly, the letter refused to recall him. Arguably, it also discharged him. Since he was laid off for medical reasons, plaintiff had an expectation of being called back to work when he recuperated (if work for boilermakers was available at that time), but the letter permanently terminated the suspended employment relationship—as plaintiff argues, it converted a layoff into a discharge. We need not become mired in semantics. The substance of plaintiff's theory is clear. He alleges that defendant denied him work in retaliation for his exercising rights or remedies granted to him by the Act. That is the germane point. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102, 776 N.E.2d 195, 200-01 (2002) (when analyzing a pleading, a court will look at its substance; labels are not controlling).

## C. Pretext

■ The record reveals a genuine issue as to whether defendant's stated reason for refusing to recall plaintiff, *i.e.*, substandard job performance, was a pretext for retaliating against him because of his workers' compensation claim. We infer that Warrington lifted the medical restrictions, for plaintiff testified he worked for other companies as a boilermaker in 2006. Plaintiff need not present direct evidence of a retaliatory motive; he can carry his burden of proof by showing that defendant's explanation for refusing to recall him is not believable or that it raises a genuine issue of fact as to whether defendant was retaliating against him. See *Gomez v. The Finishing Co.*, 369 Ill. App. 3d 711, 719, 861 N.E.2d 189, 198 (2006); *K mart Corp. v. Human Rights Comm'n*, 129 Ill. App. 3d 842, 845, 473 N.E.2d 73, 76 (1984) ("Intentional discrimination may be proved directly, through affirmative evidence, that race played an impermissible role in the employer's decision, or indirectly, through proof that the employer's proffered explanation is not to be believed"). In a letter to the local union, defendant declined to recall plaintiff. By way of explanation, the letter said that plaintiff had done poor work. The performance evaluations tell a different story: plaintiff's supervisors gave him mostly good or excellent ratings and no rating below average. See *Reinneck v. Taco Bell Corp.*, 297 Ill. App. 3d 211, 220, 696 N.E.2d 839, 845-46 (1998). The termination slip and Cassity's affidavit say nothing about substandard performance. A reasonable trier of fact could infer that (1) defendant gave a false reason for its refusal to recall plaintiff and (2) defendant gave this false reason because the real reason, *i.e.*, retaliation for the worker's compensation claim, was illegal and actionable. Defendant's treatment of Wondolowfski and Herman could strengthen the inference of a retaliatory motive. See *Reinneck*, 297 Ill. App. 3d at 215, 696 N.E.2d at 842-43.

## III. CONCLUSION

For the foregoing reasons, we reverse the summary judgment of June 9, 2008, and remand this case for further proceedings.

Reversed and remanded.

MYERSCOUGH and POPE, JJ., concur.