NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230308-U

NO. 4-23-0308

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 22, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| DENISE MROZEK, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| WALMART, INC., | ) | No. 21L16 |
|     Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the circuit court did not err in
granting defendant's motion for summary judgment.

¶ 2    Plaintiff, Denise Mrozek, sued defendant, Walmart, Inc. (Walmart), bringing a
negligence action under the Premises Liability Act (740 ILCS 130/1 *et. seq* (West 2020)).
Pursuant to section 2-1005(c) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(c)
(West 2022)), Walmart moved for summary judgment, which the circuit court granted.

¶ 3    On appeal, Mrozek argues a genuine issue of material fact exists as to whether the
allegedly defective shelf constituted an open and obvious condition, making summary judgment
inappropriate. We disagree and affirm.

¶ 4                                   I. BACKGROUND

¶ 5    In December 2020, Mrozek went to the Walmart retail store at or near 1706 West
Reynolds Street in Pontiac, Illinois. While shopping, her Spandex leggings caught on the edge of

a low shelf, causing her to trip and fall to the ground. She sustained injuries to her knees. She did not sustain any scrapes or scratches to her leg. Her leggings were not damaged. No one witnessed Mrozek fall. Two Walmart associates responded to the incident, talked with Mrozek, and completed an incident report.

¶ 6   In July 2021, Mrozek initiated these proceedings by filing a complaint pursuant to the Premises Liability Act, alleging Walmart's negligence in:

> "(a) Causing its property to contain a low level display shelf with sharp edge, which posed a foreseeable risk to the safety of customers and the public;
>
> (b) Allowing its property to contain a low level display shelf with sharp edge which posed a foreseeable risk to the safety of customers and the public;
>
> (c) Failing to maintain its display shelf;
>
> (d) Failing to promptly replace a missing shelf piece;
>
> (e) Failing to block or barricade a dangerous condition on their property;
>
> (f) Failing to properly warn invitees of a dangerous condition on their property with signs, cones, or other warning devices; and
>
> (g) Being otherwise negligent in causing and allowing the hazardous and dangerous condition to exist."

Mrozek grounded these claims in the following allegation: "a defective condition existed in that a display shelf close to the floor was missing the rounded corner piece which covered the sharp edges prone to ensnare bypassers and create tripping hazards."

¶ 7   Walmart's answer denied the complaint's allegations and asserted affirmative defenses. Discovery culminated in witness depositions from Mrozek and the two Walmart employees who responded to the incident, Amy Bednar and Georgette Toney. Mrozek stated she

tripped on a shelf and fell down. She identified the shelf in pictures and the particular corner she tripped over, calling it "[t]he corner that was broke." She elaborated she put down a case of cat food and turned the corner, "and that is when my pants got caught on the shelf that was broken. I fell." Mrozek recalled she was wearing "[S]pandex leggings" that were tight around her ankles and calves—"[t]hey didn't hang like jeans." Mrozek explained her legging caught on "the part that was sticking out that was broke." She said her right leg contacted the shelf, but her leggings were not damaged or ripped. She did not sustain any scrapes or scratches from the corner shelf. When Walmart employees arrived at the scene, Mrozek told them she "had tripped over the broken shelf." She admitted she had never seen the shelf corner before and did not know how it came to be broken. She noted she did not hear anyone (customer or Walmart employee) say the shelf was broken. Mrozek stated she had returned to the same Walmart store since the incident in December 2020. She observed the shelf corner was in the same condition. She took pictures of the corner. Mrozek's counsel used the term "jagged corner" when asking Mrozek about the corner that caught her legging. He then showed Mrozek pictures she took of other Walmart end cap shelves with "no jagged corner[s]."

¶ 8        In her deposition, Amy Bednar confirmed she worked at the Pontiac, Illinois, Walmart as an asset protection operations coach on the day Mrozek tripped and fell. She was still employed at the same Walmart in the same position. Bednar described her job as "safety focused," and so she responded to the report that Mrozek fell. She went to the scene and talked with Mrozek, and she reviewed the in-store video. Bednar identified the end cap where Mrozek said she tripped and fell. She noted it was a permanent fixture in the store. Bednar stated the store had different styles of end cap shelving and "other end caps have different ends on them." Looking at a picture of the end cap shelf on which Mrozek advised she tripped, Bednar stated,

"[T]here is no piece missing from that, that is sent in standard from home office/store planning. That is a pre-made one, to my understanding. But there is no piece missing from it." She elaborated that there were no loose pieces or debris from the shelf on the floor after Mrozek said she fell. Bednar stated that besides this one, the store had other end cap styles with either an L-shaped railing or a curved edge. She explained Walmart used different end caps depending on the products they would display. Based on her review of the store video, Bednar disputed whether the fall happened at all, advising, "[I]t did not show on video that she fell to her knees where she told us she fell."

¶ 9    In her deposition, Georgette Toney confirmed she worked at the Walmart store at issue. She had worked at that location for seven years, and she was a manager and a "food and consumable coach." She affirmed she was working at the store on December 20, 2020, when Mrozek fell. Toney responded to a "code white," which was an "[a]ccident, incident." She talked with Mrozek about what happened. Mrozek told Toney that "she was walking past the—walking down the aisle and she was going to across by an end cap and the end cap caught her pants leg and she fell and hit her knee." When looking at a picture of the end cap where Mrozek fell, Toney stated, "[T]here's no sharp point on that end cap." Toney noted the end cap was a permanent fixture and one of several different styles of end caps in the store. She stated the end cap appeared normal—"That's how that one's made. That's how the manufacturer made it." She noted it was not missing a piece, nor was it broken. Furthermore, she explained there was nothing that could be inserted to make the end cap shelf "flush." Toney noted the Walmart store used different styles of end cap shelves—some with L-shaped railings or rounded edges. She said there were "several" more end caps in the store like the one in question. When asked whether it would be fair to say most of the end caps were either rounded or railed, as opposed to

notched like the one in question, Toney said, "A lot of them have the notch style, the rounded, it's—they—it varies." Toney said she thought Walmart used even more end cap styles than the three depicted in the pictures, but she could not recall the exact number. When asked about the video, Toney said, "[W]e looked at the video prior, before the incident and after the incident. Well, in the video we do not see her falling." Upon further inquiry, she elaborated, saying, "Actually you could see the end cap and you can see her coming around and you might see her stumble, but I did not see her fall."

¶ 10       In January 2023, Walmart moved for summary judgment, maintaining it owed no duty of care to Mrozek because the end cap shelf on which she allegedly tripped was not defective. Alternatively, Walmart argued that even if the shelf was defective, it had no notice of the defect, and the defective shelf was an open and obvious condition for which Walmart bore no duty of care to Mrozek. Walmart attached to its motion Mrozek's complaint, the three deposition transcripts, and five color photographs of the end cap shelf corner where Mrozek tripped. Mrozek filed a response, arguing summary judgment would be inappropriate because genuine issues of material fact remained for a jury to decide, the open and obvious doctrine did not apply to this situation, and Walmart did not need notice of the defective shelf. Mrozek attached to her motion eight black-and-white photographs—six pictures of the end cap shelf where Mrozek tripped and two pictures of other end cap styles in the store.

¶ 11       The circuit court held a hearing via Zoom on Walmart's summary judgment motion on March 17, 2023, though a transcript of the proceeding is not part of the appellate record. Three days later, the court issued an order granting summary judgment, "finding the condition was open and obvious."

¶ 12       This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14          On appeal, Mrozek argues the circuit court erred in granting Walmart's motion

for summary judgment because there remained genuine issues of material fact as to whether

Walmart owed her a duty of care. Walmart maintains summary judgment was appropriate

because it owed Mrozek no duty of care. We agree with Walmart and affirm the court's

judgment.

¶ 15                               A. Summary Judgment

¶ 16          Section 2-1005(c) of the Code (735 ILCS 5/2-1005(c) (West 2022)) governs

summary judgments, providing the circuit court must enter judgment where "the pleadings,

affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable

to the nonmovant, reveal that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." *Busch v. Graphic Color Corp.*, 169 Ill. 2d

325, 333, 662 N.E.2d 397, 402 (1996) (citing Ill. Rev. Stat. 1989, ch. 110, ¶ 2-1005(c)). Our

supreme court observed, "The purpose of summary judgment is to determine whether a question

of fact exists." *Busch*, 169 Ill. 2d at 333. Indeed, the first step in our *de novo* review is to review

the record to determine if there exists a genuine issue of material fact. *Herman v. Power*

*Maintenance & Constructors, LLC*, 388 Ill. App. 3d 352, 360, 903 N.E.2d 852, 859 (2009). "An

issue is 'genuine' if the record contains evidence to support the position of the nonmoving

party." *Herman*, 388 Ill. App. 3d at 360 (citing *Caponi v. Larry's 66*, 236 Ill. App. 3d 660, 670,

601 N.E.2d 1347, 1354 (1992)).

¶ 17                      B. Premises Liability Actions for Negligence

¶ 18          "In a negligence action, the plaintiff must plead and prove the existence of a duty

owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting

from the breach." *Wade v. Wal-Mart Stores, Inc.*, 2015 IL App (4th) 141067, ¶ 12, 39 N.E.3d 1141. Unlike the breach and proximate cause elements, which are factual questions for a jury and ill-suited for summary judgment, "[w]hether a duty exists under a particular set of circumstances is a question of law for the court to decide," making it a suitable question for summary judgment. *Hutson v. Pate*, 2022 IL App (4th) 210696, ¶ 39, 216 N.E.3d 1085; see *Wade*, 2015 IL App (4th) 141067, ¶ 12 ("In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper." (Internal quotation marks omitted.)); *Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669, ¶ 45, 115 N.E.3d 282 ("If no duty exists, then summary judgment for the defendant is proper."). This case turns upon the duty element.

¶ 19    Our supreme court has said, "The concept of duty in negligence cases is involved, complex, and nebulous." *Simpkins v. CSX Transportaion, Inc.*, 2012 IL 110662, ¶ 17, 965 N.E.2d 1092. "A duty of care arises when the parties stand in such a relationship to one another that the law imposes upon defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 437, 566 N.E.2d 239, 242-43 (1990). Our supreme court has "recognized four relationships that give rise to an affirmative duty to aid or protect another against an unreasonable risk of physical harm," and one of those is a "possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation." (Internal quotation marks omitted.) *Simpkins*, 2012 IL 110662, ¶ 20. So, under Illinois law, "[g]enerally, *** a possessor of land owes its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition." *Deibert*, 141 Ill. 2d at 437.

¶ 20 Mrozek grounds her negligence claim in premises liability. " 'Illinois has adopted the rules set forth in sections 343 and 343A of the Restatement (Second) of Torts regarding the duty of possessors of land to their invitees.' " *Pate*, 2022 IL App (4th) 210696, ¶ 44 (quoting *Deibert*, 141 Ill. 2d at 434). "A claim for premises liability requires that a possessor of land (1) knew or should have known that (2) a condition on the property presented an unreasonable risk of harm and (3) should have anticipated that persons would not discover the danger or would otherwise fail to protect themselves against it." *Pate*, 2022 IL App (4th) 210696, ¶ 44.

¶ 21 Illinois law provides an exception to a possessor of land's general duty of care to invitees—the open and obvious doctrine. " 'When a condition is deemed open and obvious, the likelihood of injury is generally considered slight as it is assumed that people encountering potentially dangerous conditions that are open and obvious will appreciate and avoid the risks.' " *Pate*, 2022 IL App (4th) 210696, ¶ 49 (quoting *Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 12, 960 N.E.2d 764). For purposes of premises liability actions, like we have here, the open and obvious doctrine "provides that a 'possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them.' " (Emphasis omitted.) *Pate*, 2022 IL App (4th) 210696, ¶ 50 (quoting Restatement (Second) of Torts § 343A(1) (1965)).

¶ 22 The circuit court decided this case on the open and obvious doctrine, "finding the condition was open and obvious." The parties understandably focus their appellate arguments on whether the corner of the end cap shelf was an open and obvious condition. But we need not reach the open and obvious doctrine. We find the end cap shelf at issue was not a condition on the property presenting an unreasonable risk of harm; therefore, we conclude Walmart owed Mrozek no duty of care. Because there is no duty, we will not consider the exception to the duty

rule. And without a duty, there can be no negligence. See *Winters*, 2018 IL App (4th) 170669,

¶ 45 ("If no duty exists, then summary judgment for the defendant is proper."). Consequently, we

hold the circuit court properly entered summary judgment for Walmart.

¶ 23                                    C. This Case

¶ 24          As the plaintiff, Mrozek must allege and establish that Walmart owed her a duty

of care against a condition on the property that presents an unreasonable risk of harm. See *Pate*,

2022 IL App (4th) 210696, ¶ 44. Mrozek's negligence claims, therefore, depend upon her

allegation that "a defective condition existed in that a display shelf close to the floor was missing

the rounded corner piece which covered the sharp edges prone to ensnare bypassers and create

tripping hazards." Her complaint alleged Walmart negligently caused and maintained the

dangerous condition on the property—"a low level display shelf with a sharp edge which posed a

foreseeable risk to the safety of customers and the public." She further alleged Walmart failed to

warn customers about the dangerous condition. But viewing the pleadings, depositions, and

exhibits in a light most favorable to Mrozek, we conclude she failed to establish a genuine issue

of material fact that there existed a condition in the store that presented an unreasonable risk of

harm for which Walmart owed her a duty of care. See *Herman*, 388 Ill. App. 3d at 360.

¶ 25          The primary evidence that the shelf was defective with a sharp edge came from

Mrozek's deposition testimony. When questioning Mrozek, her counsel used the term "jagged

edge." But Mrozek did not use the terms "jagged" or "sharp." She used the term "broken." She

repeatedly claimed the corner of the end cap shelf in question was "broken." She maintained her

tight leggings caught on a "broken" shelf, causing her to trip and fall. But Mrozek had no basis

for her conclusion that the shelf was broken. She acknowledged having no personal knowledge

about the shelf prior to encountering it on December 20, 2020. She stated she had never seen the

shelf before, nor did she know how it was broken. She never heard a Walmart employee or customer say the shelf was broken.

¶ 26 By contrast, Walmart employees Bednar and Toney both testified they had personal knowledge of the particular end cap shelf, as they had worked in the Pontiac Walmart store for several years. Both women stated the shelf in question was not broken or defective. Bednar observed there were no missing pieces from the shelf. Toney likewise noted "there's no sharp point on that end cap." She testified the shelf appeared normal. The shelf was not missing a piece. Further, Toney said there was nothing that could be added to the shelf's corner to make it rounded or flush.

¶ 27 To establish a genuine issue of fact concerning the shelf's defective condition, Mrozek attached eight photographs to her response to Walmart's summary judgment motion— six photos of the shelf on which she tripped and two pictures of other end cap shelves. But the pictures do not establish the end cap shelf corner in question was broken, sharp, or defective in any way. The pictures show Walmart used different types of end cap shelves to display various products, like holiday dog sweaters, cat litter, or snow shovels. Bednar's and Toney's respective deposition testimony confirmed the store used different styles of end cap shelving. Both stated the shelf in question was one of several different styles of end cap shelves the store used to display merchandise. Both testified this type of end cap shelf, with this type of corner, was used elsewhere in the store. Toney explained different end caps were used to display different merchandise. She noted the end cap with railings were used to hold heavier products, like the cat litter shown in the picture. But "different" is not synonymous with "defective." The pictures, therefore, do not create a genuine issue of material fact that the shelf was defective and

amounted to a condition on the property that presented an unreasonable risk of harm. See

*Herman*, 388 Ill. App. 3d at 360.

¶ 28    Mrozek's claims the shelf was broken or had a sharp corner were opinion-based and speculative. She had no basis for concluding the shelf was defective, which undercut her claim Walmart owed her a duty of care. She presented no testimony from any source to establish the shelf was "broken," relying instead on her black and white photographs and her self-serving conclusion the end cap was "broken." To establish a duty here, Mrozek had to show there was a condition on the property that presented an unreasonable risk of harm. *Pate*, 2022 IL App (4th) 210696, ¶ 44. Our supreme court has said "unsupported conclusions, opinions, or speculation are insufficient to raise a genuine issue of material fact." *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 20, 52 N.E.3d 319. Because Mrozek failed to satisfy her burden of establishing Walmart owed her a duty of care under these circumstances, we find summary judgment was appropriate here. Though we do not address the open and obvious doctrine, " 'we may affirm a [circuit] court's grant of summary judgment on any basis appearing in the record.' " *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 396-97, 893 N.E.2d 303, 309 (2008) (quoting *State Automobile Mutual Insurance Co. v. Habitat Construction Co.*, 377 Ill. App. 3d 281, 291, 875 N.E.2d 1159, 1168 (2007)). Accordingly, we find the circuit court had no need to address the open and obvious nature of the condition in the absence of any evidence to support the conclusion that the condition was defective or dangerous.

¶ 29    Mrozek alternatively argues that summary judgment was improper because her complaint alleged " 'active negligence' " in addition to premises liability. To describe situations where a direct action by a defendant, rather than a condition on the land, caused a plaintiff's injury, this court has employed the phrase "active negligence." *Pate*, 2022 IL App (4th) 210696,

¶¶ 59-62. For example, in *Pate*, the plaintiff was tripped by the direct action of the defendant pulling the hose, rather than the hose laying across the defendant's front yard. *Pate*, 2022 IL App (4th) 210696, ¶ 62. The hose was merely the instrument of the injury, not the cause. *Pate*, 2022 IL App (4th) 210696, ¶ 62. In contrast, Mrozek here did not allege or establish any direct action from Walmart causing her injury except the condition of the shelves maintained by defendant. Mrozek tripped on the shelf herself while on Walmart's property, which resulted in the injury. There was no active negligence claim in this case.

¶ 30                                   III. CONCLUSION

¶ 31          For the reasons stated, we affirm the circuit court's entry of summary judgment.

¶ 32          Affirmed.