# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Bowles v. Owens-Illinois, Inc.*, 2013 IL App (4th) 121072

---

| | |
|---|---|
| Appellate Court Caption | VIRGINIA BOWLES, Individually and as Independent Executrix of the Estate of Jerald Bowles, Deceased, Plaintiff-Appellant, v. OWENS-ILLINOIS, INC., and JOHN CRANE, INC., Defendants-Appellees, and PNEUMO ABEX CORPORATION; PNEUMO ABEX, LLC; HONEYWELL INTERNATIONAL, INC.; METROPOLITAN LIFE INSURANCE COMPANY; GARLOCK SEALING TECHNOLOGIES, LLC; AURORA PUMP COMPANY; BUFFALO PUMPS, INC.; WARREN PUMPS, INC.; and TYCO FLOW CONTROL INC., f/k/a YARWAY CORPORATION, Defendants. |
| District & No. | Fourth District<br>Docket No. 4-12-1072 |
| Filed | October 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendants in plaintiff's action seeking damages arising from her decedent's lung cancer, which was allegedly caused by his exposure to asbestos and asbestos-containing products, since her allegations of exposure to such products were speculative and evidence that decedent worked with or was around asbestos-containing products with sufficient frequency, regularity, and proximity to create a genuine issue of material fact was lacking. |
| Decision Under Review | Appeal from the Circuit Court of Adams County, No. 09-L-65; the Hon. Mark A. Drummond, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Steve Wood and Andrew Kelly (argued), both of Wylder Corwin Kelly LLP, of Bloomington, for appellant.

Robert H. Riley, Matthew J. Fischer (argued), Neil Lloyd, and Stephen Copenhaver, all of Schiff Hardin LLP, of Chicago, for appellee Owens-Illinois, Inc.

Daniel J. O'Connell, Mark I. Tivin, Benjamin J. Pucci, and William C. Swallow, all of O'Connell, Tivin, Miller & Burns, LLC, and Michael A. Pollard (argued) and Eileen T. Flynn, both of Baker & McKenzie LLP, both of Chicago, for appellee John Crane, Inc.

Panel    JUSTICE TURNER delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment and opinion.

## OPINION

¶ 1    In October 2009, plaintiff, Virginia Bowles, individually and as independent executrix of the estate of Jerald Bowles, deceased, filed suit against Owens-Illinois, Inc. (Owens-Illinois), John Crane, Inc. (John Crane), and other defendants, seeking damages in connection with decedent's lung cancer allegedly caused by his exposure to asbestos and/or asbestos-containing products. In June 2012, the trial court granted motions for summary judgment filed by Owens-Illinois and John Crane.

¶ 2    On appeal, plaintiff argues the trial court erred in granting the motions for summary judgment filed by Owens-Illinois and John Crane on her exposure counts. We affirm.

¶ 3                     I. BACKGROUND

¶ 4    Decedent, Jerald Bowles, entered the United States Navy at age 17 and served for over 20 years from September 1955 to June 1976. He worked as a radioman on several vessels, including the USS Floyd B. Parks (Parks), where he served from December 4, 1958, to May 27, 1960. The Parks was a Gearing-class destroyer commissioned in 1945 with a personnel capacity of approximately 340. At a length of over 300 feet, the Parks had two fire rooms and two engine rooms. Decedent's duties included encryption, maintenance of classified publications, and radio operations. A radioman would work in "radio central," which was located either on the second or third level not far from the bridge.

¶ 5    Decedent was diagnosed with lung cancer in February 2009. He underwent radiation treatment and chemotherapy but died on August 7, 2009, at the age of 71. He was survived

by his wife (plaintiff), two children, and four grandchildren.

¶ 6    In October 2009, plaintiff, individually and as executrix of decedent's estate, filed a complaint against John Crane; Owens-Illinois; Honeywell International, Inc. (Honeywell); and other defendants, to recover for decedent's injuries and death allegedly sustained as a result of exposure to asbestos-containing products. Plaintiff also brought suit against Pneumo Abex Corporation; Pneumo Abex, LLC; Owens-Illinois; Honeywell; and Metropolitan Life Insurance Company under a conspiracy theory.

¶ 7    Deposition testimony included men who served on the Parks. Billy Wright testified he served on the Parks from December 1957 to the "latter part of" 1959. He testified to the piping present on the Parks and stated dust particles would be dispersed when the ship's guns were fired. The pipes had insulation on them but he could not be positive the insulation contained asbestos. He recognized the name "John Crane" from the chemical plant where he worked. If he "had to guess," he would say the pipe insulation was Kaylo. He was not familiar with decedent and had no recollection of decedent being in the engine room.

¶ 8    Bill Revell testified he spent 21 years in the Navy and served on the Parks between 1955 and 1958. He stated pipes ran through the sleeping area. In the galley, the insulation was held on by straps. He remembered calling the insulation "KO." When counsel asked if he meant "Kaylo," Revell stated it "could have been Kaylo or KO." He stated "this Kaylo" was painted on top of metal straps that held the insulation. On further examination by opposing counsel, Revell stated he did not know whether the insulation was KO or Kaylo.

¶ 9    John Rogers testified he was on the Parks from 1957 to 1960. He talked about replacing insulation during repairs and thought they used Owens-Illinois and Johns Manville. He saw boxes marked Owens-Illinois in the boiler room. He stated some of the men would go to the boiler room to smoke. He also worked with John Crane gaskets and packings on the Parks. He replaced steam line gaskets "quite often" and did valve packings "routinely." The gaskets would be removed using a box end wrench and screwdriver to pry the flanges apart. Steam valve packings were used for the boiler feed, water, and bilge pumps. He used the John Crane packing material "pretty frequently on steam valves." To install the packing, the old packing would be removed with a hook and the new packing inserted. Rogers stated the radio room was on the main deck forward of the aft boiler room.

¶ 10    Salvador Lopez served on the Parks from May/June 1956 until May/June 1960. He stated the piping that ran through the ship was painted white. The insulation ran through the sleeping compartments and it would come off when the guns were fired.

¶ 11    Thomas McCaffery, an expert for John Crane, testified Owens-Illinois Kaylo was one of the top three products used by the Navy along with UNARCO's Unibestos and insulation from Johns Manville. The Parks underwent an overhaul from November 1959 to February 1960 and 107 man days went toward replacing insulation. McCaffery did not see how decedent could have avoided exposure during this overhaul. He testified his research showed a sister ship of the Parks fired its guns and the "concussive and shock forces of firing the guns on the structure of the ships was causing the fiberglass hull insulation to create so much dust that it got into everybody's bed, into the food, into people's hair, [and] obviously breathing." McCaffery could not see how decedent could have avoided being exposed to

falling asbestos during the firing exercises on the Parks. McCaffery also stated he could not see how decedent would have been exposed to asbestos from sheet or valve packing because he was "a radioman in radio central" and it was not his job to repack valves.

¶ 12     Plaintiff's expert, Dr. Arthur Frank, stated decedent's autopsy confirmed "metastatic adenocarcinoma of the lung." Dr. Frank opined decedent's lung cancer was caused by his exposure to asbestos in combination with his habit of cigarette smoking.

¶ 13     In February 2012, John Crane and Owens-Illinois filed motions for summary judgment. John Crane argued none of the deposed witnesses testified that decedent worked with or around a John Crane asbestos-containing product. Owens-Illinois argued no evidence showed decedent handled Owens-Illinois asbestos-containing product, namely Kaylo, or was present while others used such a product.

¶ 14     In June 2012, the trial court issued its written ruling on the conspiracy claims and the exposure claims. On the latter claims, the court found plaintiff could not meet the "frequency, regularity and proximity test" set forth in *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 603 N.E.2d 449 (1992). The court stated decedent was a radioman on the ship and no showing had been made that he ever installed or worked with asbestos that insulated the ship's pipes. Further, assuming decedent spent most of his time in the radio room or his bunk, the court noted the lack of evidence indicating the pipes in either location contained an asbestos product manufactured by Owens-Illinois and John Crane. The court reviewed the depositions and concluded any claim that decedent inhaled asbestos from either of the two manufacturers would be based on speculation, guess, or conjecture. As plaintiff could not show how frequently the product was used, where it was used, and the regularity of decedent's employment within that zone, the court granted summary judgment in favor of defendants.

¶ 15     In October 2012, the trial court denied plaintiff's motions to reconsider. In November 2012, plaintiff appealed the trial court's orders granting summary judgment on the conspiracy claims (Honeywell, Pneumo Abex Corporation, and Owens-Illinois) and on the exposure claims (Owens-Illinois and John Crane). In February 2013, this court allowed plaintiff's motion to dismiss her appeal as to the conspiracy claims.

¶ 16                                    II. ANALYSIS

¶ 17     Plaintiff argues the trial court erred in granting summary judgment in favor of Owens-Illinois and John Crane. We disagree.

¶ 18                                A. Standard of Review

¶ 19     "Summary judgment is appropriate where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201, 902 N.E.2d 645, 648 (2008) (quoting 735 ILCS 5/2-1005(c) (West 2000)). "Summary judgment is a drastic remedy and should be allowed only when the right of the moving party is clear and free from doubt." *Jones v.*

*Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 1127 (2000). However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328, 722 N.E.2d 227, 237 (1999). On appeal from a trial court's decision granting a motion for summary judgment, our review is *de novo*. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007).

¶ 20                                    B. Asbestos Exposure

¶ 21       To survive a motion for summary judgment on the issue of exposure to a defendant's asbestos product, the plaintiff must satisfy the "frequency, regularity, and proximity" test, which requires that a plaintiff "show that the injured worker was exposed to the defendant's asbestos through proof that (1) he regularly worked in an area where the defendant's asbestos was frequently used and (2) the injured worker did, in fact, work sufficiently close to this area so as to come into contact with the defendant's product." *Thacker*, 151 Ill. 2d at 359, 603 N.E.2d at 457. A plaintiff cannot present her case to the jury unless there is sufficient evidence for the jury to conclude the defendant's conduct was a cause of the injury. *Johnson v. Owens-Corning Fiberglass Corp.*, 284 Ill. App. 3d 669, 676, 672 N.E.2d 885, 890 (1996). Moreover, a plaintiff "has the burden of proving more than just minimal contact with a defendant's asbestos product." *Johnson*, 284 Ill. App. 3d at 676, 672 N.E.2d at 890.

¶ 22       In *Thacker*, 151 Ill. 2d at 348, 603 N.E.2d at 452, the plaintiff, individually and as administratrix of the estate of her deceased husband, brought suit against the defendant seeking damages for the decedent's death from cancer, which she claimed he contracted while working at the Bloomington UNARCO plant. The evidence indicated the decedent worked at the plant from 1954 through 1962 with most of his tenure spent in the pipe covering department. *Thacker*, 151 Ill. 2d at 349, 603 N.E.2d at 452. The plant consisted of "a large open area with a particularly high ceiling and no interior walls." *Thacker*, 151 Ill. 2d at 349, 603 N.E.2d at 452. Raw asbestos was used at the plant, and the decedent stated his job included opening bags of asbestos. *Thacker*, 151 Ill. 2d at 350, 603 N.E.2d at 453. Testimony indicated asbestos of the same type as that supplied by the defendant was used in the plant. *Thacker*, 151 Ill. 2d at 351, 603 N.E.2d at 453. Testimony from UNARCO employees touched on "the high level of dust in the plant," dust that "freely circulated," and dust that "was continuously visible in the air of the plant when viewed in bright light." *Thacker*, 151 Ill. 2d at 351, 603 N.E.2d at 453.

¶ 23       The decedent, a nonsmoker, died of lung cancer in 1981, and it was stipulated he died from exposure to asbestos. *Thacker*, 151 Ill. 2d at 349, 603 N.E.2d at 452. The jury found in favor of the plaintiff, and the appellate court ultimately affirmed the trial court's judgment on the verdicts. *Thacker*, 151 Ill. 2d at 348-49, 603 N.E.2d at 452.

¶ 24       The main issue on appeal centered on whether the defendant was entitled to a directed verdict or judgment *n.o.v.* because the plaintiff allegedly failed to produce sufficient evidence of exposure to the defendant's asbestos. *Thacker*, 151 Ill. 2d at 351, 603 N.E.2d at 453. The defendant argued the question of causation should not have gone to the jury because the decedent testified he did not work with the defendant's asbestos. *Thacker*, 151 Ill. 2d at 355, 603 N.E.2d at 455. The plaintiff, however, argued the evidence showed the defendant's

asbestos circulated in the plant's air and became part of the visible dust the decedent inhaled. *Thacker*, 151 Ill. 2d at 355-56, 603 N.E.2d at 455.

¶ 25    Our supreme court adopted the "frequency, regularity and proximity" test, finding the requirements of the test "attempt to seek a balance between the needs of the plaintiff (by recognizing the difficulties of proving contact [with asbestos products]) with the rights of the defendant (to be free from liability predicated upon guesswork)." *Thacker*, 151 Ill. 2d at 359, 603 N.E.2d at 457. In considering the facts in that case, the court found the decedent worked in the plant for over eight years and "at least 75 tons of defendant's *raw* asbestos was processed at the plant during this time." (Emphasis in original.) *Thacker*, 151 Ill. 2d at 360, 603 N.E.2d at 457. In responding to the defendant's argument that a maximum of just 3% of the total dust in the plant could have been generated by its asbestos and that the actual dust in the decedent's work station was likely significantly less, the court pointed toward expert testimony stating even slight exposure can adversely affect a person's health and thus the court could not say "3% is insignificant as a matter of law." *Thacker*, 151 Ill. 2d at 360, 603 N.E.2d at 457. Considering the amount of the defendant's asbestos likely to have been used at the plant, the nature of the work performed there, and the amount of time the decedent worked inside the plant, the court found the evidence was sufficient to conclude there was frequent use of the defendant's asbestos at the plant where the decedent regularly worked. *Thacker*, 151 Ill. 2d at 360, 603 N.E.2d at 457.

¶ 26    The supreme court then turned to the question of "whether the plaintiff has produced sufficient evidence as to whether this asbestos was used 'in proximity' to where the decedent worked." *Thacker*, 151 Ill. 2d at 360, 603 N.E.2d at 457. In looking at so-called "fiber drift" evidence, the court considered this court's decision in *Wehmeier v. UNR Industries, Inc.*, 213 Ill. App. 3d 6, 572 N.E.2d 320 (1991), which held "evidence of both regularity of use and proximity were prerequisites to allowing a plaintiff to take the causation question to the jury in Illinois but that 'fiber drift' evidence could be used to meet the proximity requirement of the [frequency, regularity, and proximity] test." *Thacker*, 151 Ill. 2d at 363, 603 N.E.2d at 459. The court stated, in part, as follows:

> "[I]n order for the plaintiff to prevail on the causation issue there must be some evidence that the defendant's asbestos was put to 'frequent' use in the Bloomington facility in 'proximity' to where the decedent 'regularly' worked. While we agree that evidence of fiber drift, the expanse of the plaintiff's workplace, the extent of time the plaintiff was exposed, the type of asbestos used, the way in which it was used and medical evidence relating to the plaintiff's specific injuries are all relevant to the proximate cause analysis, the plaintiff here cannot meet her burden of production unless and until she is able to point to sufficient evidence tending to show that [the defendant's] asbestos was actually inhaled by the decedent. It is only when this is shown, under the facts of this case, that we believe the jury's verdict can be supported. Again, 'proximity' becomes the controlling issue." *Thacker*, 151 Ill. 2d at 364, 603 N.E.2d at 459.

The court found the fact that the defendant's asbestos contributed to the dust in the plant's air met the proximity requirement "particularly in light of (1) the friable and potent nature of the *raw* asbestos [the defendant] shipped to the plant and (2) testimony, albeit slight, indicating that [the defendant's] asbestos necessarily generated dust which became part of

dust which circulated throughout the facility." (Emphasis original.) *Thacker*, 151 Ill. 2d at 364-65, 603 N.E.2d at 459.

¶ 27                                    1. *Owens-Illinois*

¶ 28     We first ask whether decedent regularly worked in an area where Owens-Illinois asbestos-containing products were frequently used. Captain William Lowell, a defense expert, concluded the original insulation installed on the Parks was most likely UNARCO's Unibestos. Wright could only guess that Kaylo was present on the Parks. No evidence indicates the exact location where Owens-Illinois products might have been installed or how frequently decedent was in those locations. No evidence indicates the pipes in the radio room where decedent worked or the bunk where he slept contained Owens-Illinois asbestos products. No one can say Owens-Illinois products were frequently used in proximity to where decedent regularly worked. Decedent, as a radioman, did not work with raw asbestos, as did the decedent in *Thacker*, and any claim that the dust falling from the pipes during the firing of the guns was Owens-Illinois asbestos is nothing more than pure speculation.

¶ 29     In an attempt to show decedent's exposure to Owens-Illinois asbestos products, plaintiff's counsel has taken liberties with the deposition testimony. Plaintiff claims Revell testified to Owens-Illinois Kaylo being "all over the ship." However, a close reading of Revell's testimony prevents such a definitive conclusion. Revell testified he remembered referring to a type of insulation as "KO." When asked by counsel whether he meant "Kaylo," Revell said it "could have been Kaylo or KO." Counsel then peppered his following questions with references to "this Kaylo insulation," to which Revell once responded was on "all the water pipes." However, on examination by opposing counsel, Revell stated he did not know whether the insulation was "KO or Kaylo." Revell also could not testify the type of insulation he was speaking of was specifically on the Parks as opposed to some other ship. Plaintiff's claim that Kaylo was "all over the ship" is not backed up by Revell's inconclusive testimony.

¶ 30     Plaintiff also relies on the testimony of Thomas McCaffery and claims decedent personally took part in an overhaul of the Parks with old insulation being removed and new insulation being installed. While McCaffery did testify an overhaul occurred on the Parks between November 1959 and February 1960 and decedent was onboard during this time, he did not say decedent took part in ripping out the old insulation. McCaffery stated the ship's crew did the "rip-out" with trained craftsmen installing the new insulation. Concluding decedent took part in the removal of insulation, which could have been UNARCO's Unibestos, is too speculative of a leap to survive summary judgment. See *Zimmer v. Celotex Corp.*, 192 Ill. App. 3d 1088, 1091, 549 N.E.2d 881, 883 (1989) (stating "liability cannot be based on mere speculation, guess, or conjecture").

¶ 31     Even if Owens-Illinois Kaylo was on the ship and utilized in repair work, it has not been shown where Kaylo was placed, whether decedent worked or slept in areas Kaylo was present, or whether Kaylo asbestos dust fell from the pipes when the guns were fired. A claim that decedent was exposed to Kaylo during his time on the Parks is wholly speculative. Even if Kaylo was present in the boiler room at some unspecified time, considering Rogers

said he saw boxes of Owens-Illinois insulation there, it is pure speculation that decedent went to the boiler room to deliver a message to the captain or to smoke cigarettes. Considering all the evidence and testimony, plaintiff could not meet the requirements of the "frequency, regularity and proximity" test. Thus, summary judgment for Owens-Illinois was appropriate.

¶ 32                                    2. *John Crane*

¶ 33     As we did before, we ask whether decedent regularly worked in an area where John Crane asbestos-containing products were frequently used. The evidence indicates he did not. No testimony indicated decedent worked with John Crane products or was around people who regularly did so. Plaintiff points to the testimony of John Rogers, who used John Crane gaskets and packings on the Parks. Plaintiff notes Rogers replaced steam line gaskets "quite often" and valve packings "routinely." Plaintiff also presented evidence that John Crane gaskets and packings contained asbestos. However, plaintiff neglects to point out Rogers' testimony where he stated his removal of the gaskets did not create any dust. Further, dust was not caused by cutting the packing with a knife. Rogers stated he did not do any gasket or packing work outside of the aft fire room, a place plaintiff can only speculate decedent would have gone as a messenger or to light up a smoke.

¶ 34     Plaintiff also relies on her expert Richard Hatfield, whose studies showed John Crane gaskets and packings would have released asbestos dust from routine maintenance. The study involved a 20-foot by 15-foot by 8-foot "exposure characterization lab," wherein the subjects removed old asbestos-containing packing from valves and then repacking the valves with new asbestos packing. The study found the subjects' clothing became contaminated with asbestos fibers and cleaning rags and surface areas also showed contamination.

¶ 35     Hatfield's study might be of benefit to plaintiffs in some asbestos cases but not here. First, Rogers stated his work with John Crane gaskets and packings did not create dust when he worked with them. Second, decedent did not work in the removal and installation of John Crane gaskets or packings. Third, decedent worked in radio central, not in the boiler room. Fourth, McCaffery testified the ventilation system for the boiler room would be exhausted up the smokestack. Fifth, McCaffery stated a radioman would have to go down several levels and through several hatches to reach the fire room. Thus, this was not a situation with a plaintiff working with or near asbestos in an open environment such as a grain processing plant (*Spain v. Owens Corning Fiberglass Corp.*, 304 Ill. App. 3d 356, 359, 710 N.E.2d 528, 531 (1999)) or an asbestos plant (*Thacker*, 151 Ill. 2d at 349, 603 N.E.2d at 452), but a compartmentalized ship.

¶ 36     As plaintiff notes, each asbestos-exposure case "must stand on its own facts." *Wehmeier*, 213 Ill. App. 3d at 31, 572 N.E.2d at 337. In this case, however, plaintiff's claims that decedent was exposed to asbestos-containing products of John Crane, as well as Owens-Illinois, is speculative and conjectural. Plaintiff failed to present evidence decedent worked with or around any John Crane asbestos-containing product with sufficient frequency, regularity, and proximity to create a genuine issue of material fact. Thus, summary judgment for John Crane was appropriate.

¶ 37                                    III. CONCLUSION

¶ 38        In closing, we commend the trial court for its thorough and reasoned order on the
motions for summary judgment. For the reasons stated, we affirm the trial court's judgment.

¶ 39        Affirmed.