2015 IL App (4th) 141067
NO. 4-14-1067

FILED
September 24, 2015
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| LESLIE WADE, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Champaign County |
| WAL-MART STORES, INC., | ) | No. 11L210 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Michael Q. Jones, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Turner and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1        In November 2011, plaintiff, Leslie Wade, sued defendant, Wal-Mart Stores, Inc.

(Wal-Mart), for injuries she sustained in November 2009 after "trotting" into a pothole in Wal-

Mart's parking lot.  In September 2014, Wal-Mart filed a motion for summary judgment under

section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2014)), arguing that

(1) it did not owe Wade a duty because the pothole at issue was an open and obvious hazard and

(2) the distraction exception to the open and obvious doctrine did not apply.  Following a No-

vember 2014 hearing, the trial court granted summary judgment in Wal-Mart's favor.

¶ 2        Wade appeals, arguing that the trial court erred by granting summary judgment in

Wal-Mart's favor.  We disagree and affirm.

¶ 3                                    I.  BACKGROUND

¶ 4        The following facts were gleaned from documents the parties filed with the trial

court in support of and in response to Wal-Mart's motion for summary judgment, which included Wade's discovery deposition and a video recording viewed by the court. (The vantage point of the video recording was from the roof of the store, which depicted a large portion of the parking lot.)

¶ 5　　　　On November 3, 2009, at about 6:50 p.m., Wade parked her sport-utility vehicle (SUV) in the parking lot of the Wal-Mart store located in Savoy, Illinois. Wade exited the SUV on that clear, dry night and, accompanied by her two children (ages eight and nine at that time), walked through the parking lot to the store's entrance. Wade, who wore leather boots with a one-inch heel, acknowledged that she did not have any difficulties walking or seeing the asphalt parking lot, which was illuminated by artificial lighting. Wade and her children then entered the store.

¶ 6　　　　At approximately 7:33 p.m., Wade and her children returned to the SUV with a cart full of groceries. Wade described their demeanor as "laughing, being silly." Wade again acknowledged that she did not have any difficulties seeing the parking lot surface as she walked to her SUV. After Wade unloaded the groceries into the SUV, she returned the empty shopping cart to the corral, which was located five parking spaces away and in an aisle across from Wade's SUV. Wade then began "trotting" back to her SUV. When Wade was about six feet away from the SUV, her left foot fell into a pothole, which caused her left knee to hit the pavement. Wade "caught herself" with her left hand but suffered a broken foot as a result. Because Wade was not looking down, she did not see the pothole, which she described as a couple of feet long and a few inches deep. Wade acknowledged the possibility that if she had been looking down as she trotted back to her SUV, she could have avoided the pothole. (The video recording did not show Wade's fall because her SUV blocked that portion of the asphalt.)

¶ 7     In November 2011, Wade sued Wal-Mart, seeking compensation for injuries she sustained as a result of her fall.  In September 2014, Wal-Mart filed a motion for summary judgment under section 2-1005 of the Code, arguing that (1) it did not owe Wade a duty because the pothole at issue was an open and obvious hazard and (2) the distraction exception to the open and obvious doctrine did not apply.  Following a November 2014 hearing, the trial court granted summary judgment in Wal-Mart's favor.

¶ 8     This appeal followed.

¶ 9     II. THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT

¶ 10     Wade argues that the trial court erred by granting summary judgment in Wal-Mart's favor.  Specifically, Wade contends that (1) questions of material fact existed as to whether the pothole was an open and obvious hazard and, alternatively, (2) even if the pothole was an open and obvious hazard, the distraction exception to the open and obvious doctrine applied.  We address Wade's contentions in turn.

¶ 11     A. The Standard of Review

¶ 12     Summary judgment is a drastic means of disposing of litigation and is appropriate only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Bowles v. Owens-Illinois, Inc.*, 2013 IL App (4th) 121072, ¶ 19, 996 N.E.2d 1267.  To survive a motion for summary judgment, a plaintiff need not prove her case, but she must present a factual basis that would arguably entitle her to a judgment.  *Evans v. Brown*, 399 Ill. App. 3d 238, 244, 925 N.E.2d 1265, 1271 (2010).  In a negligence action, the plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach.  *Choate v. Indiana Harbor*

*Belt R.R. Co.*, 2012 IL 112948, ¶ 22, 980 N.E.2d 58. " 'In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper.' " *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13, 21 N.E.3d 684 (quoting *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411, 583 N.E.2d 538, 541 (1991)). We review *de novo* a trial court's decision granting a motion for summary judgment. *Bowles*, 2013 IL App (4th) 121072, ¶ 19, 996 N.E.2d 1267.

¶ 13                                  B. The Open and Obvious Doctrine

¶ 14          The open and obvious doctrine provides that a "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them." Restatement (Second) of Torts § 343A (1965). See *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 434, 566 N.E.2d 239, 242 (1990) ("Illinois has adopted the rules set forth in sections 343 and 343A of the Restatement (Second) of Torts ***."). Section 343A of the Restatement (Second) of Torts also provides, in pertinent part, the following clarifying guidance:

> " 'Obvious' means that both the condition and the risk are apparent
> to and would be recognized by a reasonable man, in the position of
> the visitor, exercising ordinary perception, intelligence, and judg-
> ment." Restatement (Second) of Torts § 343A cmt. b (1965).

¶ 15                                  C. Wade's Open and Obvious Claim

¶ 16          Wade contends that because questions of material fact existed as to whether the pothole was an open and obvious hazard, the trial court erred by granting summary judgment in Wal-Mart's favor. Specifically, Wade asserts that the "visibility of the cracked, crumbling lot and [pot]hole should be a question of fact." In support of her contention, Wade relies on the fol-

lowing cases, which we summarize.

¶ 17    In *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 17-18, 594 N.E.2d 313, 314 (1992), a billboard painter was electrocuted by a high-voltage power line that hung only 4 1/2 to 5 feet above a walkrail that ran the length of the billboard. American National Bank—as administrator of the decedent's estate—brought a wrongful death suit against the defendant. *Id*. at 17, 594 N.E.2d at 314. The defendant claimed that because the high-voltage wires were an open and obvious danger, it had no duty to warn of their presence. *Id*. at 26, 594 N.E.2d at 318. The trial court later granted summary judgment in the defendant's favor, but the appellate court reversed. *Id*. at 17, 594 N.E.2d at 314. The supreme court affirmed the appellate court's reversal, concluding, in pertinent part, as follows:

> "Contrary to [the defendant's] allegations, the Bank does not concede that the danger of the power line was open and obvious. Both through depositions and in its answer to defendant's petition for leave to appeal to this court, the Bank presented testimony by individuals who had worked on the sign that they were unaware of the power line's presence. Such testimony presents a question of fact as to whether or not the danger was open and obvious."
>
> *Id*. at 27, 594 N.E.2d at 319.

¶ 18    In *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 15, 938 N.E.2d 584, 586 (2010), the plaintiff's fall was caused by a 3/4-inch-high concrete rise in the defendant's parking garage. The plaintiff provided an affidavit from a registered professional engineer opining that " '[t]he lack of contrast between the surface of the parking level and the curb ramp *** disguised the abrupt change in vertical elevation.' " *Id*. at 16, 938 N.E.2d at 586. In her deposi-

tion, the plaintiff also noted that the lighting was poor and the color similarity between the low and high concrete surfaces "created an optical illusion of a flat walking surface." *Id*. at 15, 938 N.E.2d at 586. The trial court granted summary judgment in the defendants' favor, but the appellate court reversed, concluding as follows:

"Normally where there is no dispute about the physical nature of the condition, the question of whether a condition is open and obvious is a legal one for the court. [Citation.] But, where there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual. [Citation.] Where a court cannot conclude as a matter of law that a condition poses an open and obvious danger the obviousness of the danger is for the jury to determine. [Citation.]" (Internal quotation marks omitted.) *Id*. at 17-18, 938 N.E.2d at 587-88.

¶ 19    In *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill. App. 3d 195, 198, 732 N.E.2d 596, 598 (2000), the plaintiff injured herself after she tripped and fell while walking across a black floor mat. Afterward, the plaintiff noticed that "one particular piece of the mat was standing up approximately an inch or two higher than the other portions of the mat." *Id*. During her deposition, the plaintiff admitted that she would have seen the defective portion of the mat had she looked down. *Id*. The trial court granted summary judgment in the defendant's favor based solely on the plaintiff's admission. *Id*. at 202, 732 N.E.2d at 600. The appellate court reversed, concluding that (1) the court erred by granting summary judgment based solely on the plaintiff's admission and (2) the evidence in the record could have supported

- 6 -

"a reasonable inference that the defect in the mat was difficult to discover because of its size, the lack of significant color contrast between the defect and the surrounding mat, or merely the short time that a person has in which to discover the defect." *Id*. at 202, 732 N.E.2d at 600-01.

¶ 20        Relying on the aforementioned cases, Wade makes the following assertion:

"As [Wade] was trotting toward the [SUV], at night, she stepped into a subtle crack with no [discernible] color difference between the surrounding pavement and the defect. [Wade] had not seen it before, she had no time to observe it, and it was not readily discernible. There are, therefore, questions of material fact for the jury to determine as to whether the condition [was] open and obvious."

¶ 21        Wade's reliance on *American National Bank*, *Alqadhi*, and *Buchaklian* is misplaced. Those cases are readily distinguishable because the overarching issue in each—unlike in the instant case—is that an actual factual dispute existed as to whether the condition was an open and obvious hazard. See *Alqadhi*, 405 Ill. App. 3d at 17-18, 938 N.E.2d at 588 (if a dispute exists concerning a condition's physical nature, such as adequate lighting, the question of whether the condition is open and obvious is factual).

¶ 22        Although Wade's aforementioned summary implies that a dispute existed concerning the pothole's physical nature, the evidence presented at the November 2014 hearing on Wal-Mart's motion for summary judgment does not support her assertion that she trotted into a "subtle crack with no [discernible] color difference between the surrounding pavement and the defect." We note that Wade also places significance on her claim that (1) she did not see the pothole because she was not looking down and (2) if she had been looking down when she trot-

ted back to her SUV, she could have possibly avoided the pothole. In this regard, Wade posits that if it is unclear whether she would have seen the pothole had she been looking down, a material fact exists as to the openness and obviousness of the hazard. We reject any notion that our analysis is controlled by Wade's subjective knowledge. See *Ballog v. City of Chicago*, 2012 IL App (1st) 112429, ¶ 22, 980 N.E.2d 690 (" 'Whether a condition is open and obvious depends on the objective knowledge of a reasonable person, not the plaintiff's subjective knowledge.' ") (quoting *Prostran v. City of Chicago*, 349 Ill. App. 3d 81, 86, 811 N.E.2d 364, 368 (2004)).

¶ 23        Simply put, we disagree with Wade's assertion that the pleadings, depositions, affidavits, or other documents filed in this case supported a reasonable inference that the pothole at issue was inadequately lit, concealed, obscured, or a subtle hazard. Indeed, the undisputed evidence, which was supported by a video recording, revealed that on a clear, dry night in November 2009, Wade was trotting through Wal-Mart's illuminated asphalt parking lot back to her car when she stepped into a hole that was a couple of feet long and a few inches deep. In finding that the pothole was an open and obvious hazard, the trial court stated that Wade's testimony clearly established that no reason existed why she could not have seen the pothole and thus, could have avoided the hazard if she had been looking where she was going. Because we agree with the court's analysis, we conclude that under the circumstances presented, a reasonable person in Wade's position, exercising ordinary perception, intelligence, and judgment, would have avoided the open and obvious hazard posed by the pothole.

¶ 24        D. The Distraction Exception to the Open and Obvious Doctrine

¶ 25        Alternatively, Wade contends that even if the pothole was an open and obvious hazard, the distraction exception to the open and obvious doctrine applied. We disagree.

¶ 26        1. *The Distraction Exception to the Open and Obvious Doctrine*

¶ 27        In *Lucasey v. Plattner*, 2015 IL App (4th) 140512, ¶ 35, 28 N.E.3d 1046, this

court recently set forth the distraction exception to the open and obvious doctrine, as follows:

"The distraction exception essentially holds that even an

open-and-obvious condition may still be *unreasonably* dangerous

if the landowner should have foreseen that people would fail to no-

tice or protect themselves against the condition because they had

become distracted.  See *Ward v. K mart Corp.*, 136 Ill. 2d 132,

152, 554 N.E.2d 223, 232 (1990) ('The inquiry is whether the de-

fendant should reasonably anticipate injury to those entrants on his

premises who are generally exercising reasonable care for their

own safety, but who may reasonably be expected to be distracted,

as when carrying large bundles, or forgetful of the condition after

having momentarily encountered it.')."  (Emphasis in original.)

¶ 28                          2. *The Supreme Court's Decision in Ward*

¶ 29        Because Wade's distraction-exception claim relies on the supreme court's decision

in *Ward*, we provide a brief summary of that case.

¶ 30        In *Ward v. K mart Corp.*, 136 Ill. 2d 132, 138, 554 N.E.2d 223, 225 (1990), the

plaintiff purchased a large bathroom mirror from a store the defendant operated.  As the plaintiff

exited the store, he collided with one of two five-foot-tall concrete posts the plaintiff noticed

when he entered the store.  *Id*. at 136-37, 554 N.E.2d at 225.  The concrete posts, which were

presumably intended to protect the store's facade, were 3 feet apart and located just 19 inches

from the store's front entrance.  *Id*. at 136, 554 N.E.2d at 225.  No windows or transparent panels

would permit viewing the posts from the store's interior.  *Id*. at 136-37, 554 N.E.2d at 225.  The

plaintiff sued the defendant to recover for injuries he sustained as a direct result of the collision. *Id*. at 135, 554 N.E.2d at 224. The jury found that the defendant was liable and returned a verdict in the plaintiff's favor. *Id*. at 139, 554 N.E.2d at 226.

¶ 31 The supreme court upheld the jury's verdict, reasoning that the " 'known' or 'obvious' risk principle" does not mean that "the duty of reasonable care owed by an owner or occupier to those lawfully on his premises does not *under any circumstances* extend to conditions which are known or obvious." (Emphasis in original.) *Id*. at 145, 554 N.E.2d at 229. After applying the traditional duty analysis, the supreme court held, as follows:

"We agree with the appellate court in the present case that the post with which plaintiff collided is not a hidden danger. Indeed[,] plaintiff walked past the post when entering the store and admitted he was at least 'subconsciously' aware of its presence. We disagree with the appellate court's holding, however, that 'defendant could not reasonably have been expected to foresee that one of its customers would block his vision with an object which he had purchased and fail to see a five-foot-tall concrete post located outside of an entrance to its store.' [Citation.] We may well have arrived at a different conclusion if the post would have been located further away from the entrance of the building, or if the plaintiff would not have been carrying any vision-obscuring bundle." *Id*. at 152-53, 554 N.E.2d at 232.

¶ 32                           3. *The Trial Court's Judgment*

¶ 33 In finding that the distraction exception to the open and obvious doctrine did not

apply to the facts of this case, the trial court considered the same assertion that Wade raises to this court—namely, that "[i]t is reasonable for [Wal-Mart] to anticipate, under the circumstances, that [Wade] would be distracted when returning to her car by maintaining a lookout for other vehicles, pedestrians, [or] carts, *** and not be looking down and be distracted."

¶ 34 During its oral pronouncement at the November 2014 hearing on Wal-Mart's summary-judgment motion, the trial court first summarized the supreme court's decision in *Ward*. In so doing, the court quoted the following passage, which it determined "bears greatly upon this case":

> "We may well have arrived at a different conclusion if the post
> would have been located further away from the entrance of the
> building, or if the plaintiff would not have been carrying any vi-
> sion-obscuring bundle." *Id.* at 153, 554 N.E.2d at 232.

¶ 35 After correctly assessing that the aforementioned passage was *dicta*, the trial court continued, as follows:

> "[T]hat tells [the court] that the supreme court may well have
> reached a different conclusion if they knew that *** Wade was not
> carrying a vision-obscuring bundle because, otherwise, if [Wade]
> had just been watching where she was stepping, which she clearly
> wasn't, she would have seen the pothole. [Wade] not only wasn't
> watching, but she was engaging in something more than even a
> brisk walk, jogging or trotting [which] carries some sort of risk[.]
>
> Now [Wade] suggests, well, there could have been other
> distractions, other shopping carts, other cars and so on. Well, her

own testimony, not to mention the videotape, confirms that there weren't any other distractions. If [Wade] had just been watching where she was going, and her chances of doing that are improved if she was walking instead of running, she would have seen [the pothole]. [So the court] get[s] back to the presenting question, to what extent is the holding in *Ward* *** predicated upon the fact that, indeed, [Wade] was carrying a vision-obscuring bund[le], one which was reasonably foreseeable for the customers of [Wal-Mart] to be carrying.

*** [The court] keep[s] going back to the fact that this is clearly open and obvious. [Wade's] own testimony, not to mention the video ***, confirms that [Wade has] made admissions that she is bound by that clearly make this open and obvious[.] [N]one of the conditions that Wal-Mart might fear that [Wade would] be carrying something that would obscure her vision were actually present.

* * *

The other thing that [the court] want[s] to say *** with regard to the *** distraction theory, is that [the court] believe[s] it is significant that in this case, the landowner, Wal-Mart, wasn't responsible for the distraction which diverted [Wade's] attention. [Wade] wasn't diverted by carrying a bulky item. She was diverted because she wasn't watching where she was going. And when

- 12 -

[Wade's] attention is diverted by something that [Wal-Mart] has no control over—Wal-Mart can't control whether [Wade] looks *** or whether she runs—then [the court] think[s] the exception for distraction does not apply."

¶ 36    As the aforementioned quoted text reveals, at the close of argument during the November 2014 hearing on Wal-Mart's motion for summary judgment, the trial court meticulously set forth its rationale for rejecting Wade's distraction-exception claim by speaking, at length, from the bench. Although the *de novo* standard of review does not require this court to give deference to the trial court's conclusions or specific rationale (*Bituminous Casualty Corp. v. Iles*, 2013 IL App (5th) 120485, ¶ 19, 992 N.E.2d 1257), a trial court's decision to carefully explain the rationale underlying its ruling is always helpful because it provides valuable insight, which a reviewing court may find entirely persuasive, as we do in this case. We further note that a trial court can provide this valuable insight through a written order or by stating its ruling on the record, as the court did in this case.

¶ 37                4. *Wade's Distraction-Exception Claim*

¶ 38    Wade asserts that the distraction exception to the open and obvious doctrine applies because "[i]t is reasonable for [Wal-Mart] to anticipate, under the circumstances, that [Wade] would be distracted when returning to her car by maintaining a lookout for other vehicles, pedestrians, [or] carts, *** and not be looking down and be distracted." We disagree.

¶ 39    As we have previously noted, the distraction exception to the open and obvious doctrine examines "whether the defendant should reasonably anticipate injury to those entrants on his premises *who are generally exercising reasonable care for their own safety*, but who may reasonably be expected to be distracted, as when carrying large bundles, or forgetful of the con-

dition after having momentarily encountered it." (Emphasis added.) *Ward*, 136 Ill. 2d at 152, 554 N.E.2d at 232. "[T]he distraction exception will only apply where evidence exists from which a court can infer that plaintiff was actually distracted." *Bruns*, 2014 IL 116998, ¶ 22, 21 N.E.3d 684.

¶ 40     Despite Wade's reliance on *Ward*, we agree with the trial court's rationale that *Ward* is distinguishable because Wade was not engaged in any activity that Wal-Mart should have reasonably anticipated would have distracted her from the open and obvious hazard created by the parking lot pothole. We also conclude that on this record, no other distractions existed at the moment Wade decided to trot back to her SUV. At most, the record in this case showed that Wade failed to exercise reasonable care for her own safety by paying attention to her surroundings as she trotted back to her SUV. However, the mere fact that Wade's attention was focused elsewhere during that brief moment does not constitute the requisite distraction. See *id.* ("[T]he mere fact of looking elsewhere does not constitute a distraction.").

¶ 41     Accordingly, we affirm the trial court's grant of summary judgment in Wal-Mart's favor.

¶ 42     In so concluding, we commend the trial court for providing its comprehensive explanation of its ruling, which this court found helpful in its resolution of this appeal.

¶ 43                    III. CONCLUSION

¶ 44     For the reasons stated, we affirm the trial court's judgment.

¶ 45     Affirmed.